[Argued January 23; decided March 13, 1894.]

## WILLIAMS v. TOLEDO COAL CO.

1. MINES AND MINING—LIENS—LAWS, 1891, P. 76.—The lien given on mining claims by the act of February twentieth, eighteen hundred and ninety-one, (Laws, 1891, p. 76,) applies to claims on which minerals have not, as well as to those on which minerals have, been found.

2. MECHANIC'S LIENS—MINES.—The lien given by the act of eighteen hundred and ninety-one, (Laws, 1891, p. 76, § 1,) for work performed in making shafts, drifts, etc., on a mining claim, or in searching for metals therein, does not include labor performed in building a wagon road, not constituting an incline or an excavation, since, when liens are given for specified classes of work, all other classes are impliedly excluded.

3. MECHANIC'S LIENS—LUMP CHARGE.—An account containing a lump charge, in which are mingled lienable and nonlienable items unsegregated, will not support a lien; nor in such cases can the defect be cured by oral evidence, separating the two classes of items. *Dalles Lumber Mfg. Co.* v. *Wasco Woolen Mfg. Co.* 3 Or. 527, and *Kezartee* v. *Marks*, 15 Or. 529, approved and followed.

APPEAL from Benton: J. C. FULLERTON, Judge.

This is a suit by N. Williams against the Toledo Coal Company and others to foreclose a miner's lien. It appears from the record that the plaintiff, on July eleventh, eighteen hundred and ninety-two, filed in the office of the county clerk of Benton County, Oregon, the following notice:—

"Know all men by these presents, that I, Newton Williams, of the county of Benton, state of Oregon, do

hereby give notice of my intention to hold and claim a lien by virtue of the statute in such case made and provided upon " [ here follows a description of the real property by government survey ], " together with all improvements and appurtenances, and all situated in the county of Benton, state of Oregon, and more particularly states in 'Exhibit A,' attached and made a part hereof.  The said lien being claimed and held for and on account of work done in and upon said premises from the first day of February, eighteen hundred and ninety-two, to the twenty-eighth day of June, eighteen hundred and ninety-two.  The total value of said work and labor being five hundred and twenty-six and fifty one-hundredths dollars ( $526.50 ), upon which there has nothing been paid; that there is now due, owing, and unpaid to me, the said claimant, the full sum of five hundred and twenty-six dollars and fifty cents.  The owner of this above described property is a corporation known as 'Toledo Coal Company,' organized and working under and by virtue of the laws of the state of Oregon.  I was employed by one B. F. Jones, who was the superintendent of the above described premises for said corporation, to perform said work and labor.

   (Signed)                     " NEWTON WILLIAMS.

" STATE OF OREGON,    } ss.
  " County of Benton. }

" On this ninth day of July, eighteen hundred and ninety-two, personally appeared before me Newton Williams, and who being by me first duly sworn, on oath states that the abstract of indebtedness mentioned and described in the foregoing notice, is true and correct, and that there it still due and owing to him from the said Toledo Coal Company, for the labor aforesaid, the sum of five hundred and twenty-six dollars and fifty cents.

    " H. G. DAVIS, Notary Public.   [ SEAL.]

## "EXHIBIT A.

"This lien is made and filed under and pursuant to an act of the legislative assembly of the state of Oregon, entitled 'An act for securing liens for laborers on mining claims and material-men, and prescribing the manner of their enforcement, approved February twentieth, eighteen hundred and ninety-one'; that the said lien and claim aforesaid is made for and on account of work, labor, and services, by me done and performed in the building and construction of a wagon road for the distance of about one fourth of a mile in length, and from fourteen feet to twenty feet in width, and labor in cutting a ditch in length about two hundred and twenty-five feet and in depth from about four feet to fifteen feet, and for labor in tunneling for the distance of about one hundred feet connecting with said ditch, and also in timbering and lagging for about one hundred feet in connecting the same with a certain coal mine, and all of the said work and labor being on the said premises and particularly on the following part and portion of the said premises, to wit, the northwest quarter of the southwest quarter of section thirty-one, in township ten south, range ten west, in said county and state."

The foregoing notice is made a part of plaintiff's complaint, to which the defendants demurred for the reason that it did not state facts sufficient to constitute a cause of suit, and that said notice did not comply with the requirements of the statute in such cases. The court sustained the demurrer and the plaintiff refusing to further plead, it was decreed that the suit be dismissed, and that the defendant recover his costs and disbursements in the suit, from which decree the plaintiff appeals.

AFFIRMED.

*Messrs. J. R. Bryson* and *W. S. McFadden,* for Appellant.

*Messrs. Lawrence Flinn* and *Chas. E. Wolverton,* for Respondent.

Opinion by MR. JUSTICE MOORE.

This suit is brought under the act of eighteen hundred and ninety one, (Laws, 1891, p. 76,) to enforce an alleged lien on the property of the Toledo Coal Company. Section 1 of said act provides: "That every person who shall do work or furnish materials for the working or development of any mine, lode, mining claim, or deposit yielding metals or minerals of any kind, or for the working or development of any such mine, lode, or deposit in search of such metals or minerals; and to all persons who shall do work or furnish materials upon any shaft, tunnel, incline, adit, drift, or other excavation, designed or used for the purpose of draining or working any such mine, lode, or deposit, shall have a lien upon the same to secure to him the payment of the work or labor done or materials furnished by each respectively, which shall attach in every case to such mine, lode, and deposit, and though such shaft, tunnel, incline, adit, drift, or other excavation be not within the limits of such mine, lode, or deposit" (with some provisos not material here). It will be seen that said section gives the following liens: (1) To every person who shall do work or furnish materials for the working or development of any mine, etc.; (2) To every person who shall do work or furnish materials for the working or development of any such mine in searching for such materials or metals; and, (3) To all persons who shall do work or furnish materials upon any shaft, tunnel, incline, adit, drift, or other excavation

designed or used for the purpose of draining or working any such mine, lode, or deposit.

1.   If the term "any such mine," in the second clause, relates to and means any mine, lode, mining claim, or deposit yielding metals or minerals, then a lien. could not be acquired unless the search had been rewarded by a discovery of metals or minerals.   Can it be supposed that the legislative assembly intended that the miner who had, at the request of the owner, performed labor or furnished materials in developing a mining claim, or in searching for metals or minerals therein, would be denied the benefit of a lien because his labor had not brought to light the hidden treasures of the earth?   If that were the rule, then the miner who, in developing a claim, discovers indications of metals or minerals, could be discharged just before bringing to light the object of his search, and be deprived of any remedy against such claim for his labor or materials, while the employer, with a single blow of the pick or an additional blast, might reveal the wealth for which the laborer had toiled.   Such a harsh rule could never have been intended, as its manifest effect would be to discourage the development of mines and the search for metals or minerals by men of moderate means.   Under the law, as we understand it, the prospector or discoverer of lands supposed to contain metals or minerals is able to secure aid in prosecuting his search, as the miner is much more willing to give his services in developing mining property when encouraged by the assurance of reward for his labor which a lien on the property is likely to afford.   Both parties would thus have a common interest in the development of the claim, and, though a lien would probably not amount to much unless a discovery were made, the miner, though he might be disappointed, would not be deceived thereby.

It is evident that the term "any such mine," in the

last clause, refers to the mines mentioned in those preceding: That is, (1) to a mine that is being operated for the purpose of obtaining metals or minerals, or mining proper; (2) to labor or materials furnished in searching for metals or minerals in any designated tract that is supposed to contain them, or prospecting. Mining and prospecting are generic terms, which include the whole mode of obtaining metals and minerals, and the lien is given to every person who shall do work or furnish materials either in mining or prospecting. A lien is also given to all persons who shall do work upon or furnish materials for any shaft, etc., used for the purpose of draining or working any mine in which metals or minerals have been discovered, and to all persons who shall do work or furnish materials for any shaft, etc., designed for the purpose of working or draining any mine or place in which metals or minerals are supposed to exist, and such labor has been performed or materials furnished in prospecting for them.

2.   A lien for labor performed or for material furnished in the construction, repair, or improvement of property is a remedy given by law, and unless the notice filed by the claimant shows *prima facie* upon its face a substantial compliance with all the essential statutory provisions, no lien is thereby created, however equitable the claim may be: Phillips on Liens (3d Ed.), § 9; *Gordon* v. *Deal*, 23 Or. 153, 31 Pac. 287. The claimant must by his notice clearly bring his claim within the provisions of the statute, and show that the labor was performed upon, or the materials were furnished for, the construction, repair, or improvement of that class of property which the statute has made liable for the payment thereof, in order to be entitled to its remedial advantages: *Barclay's Appeal*, 13 Pa. St. 495. Examining the notice in the light of the foregoing rules, it appears that a portion of the

labor was performed in building a wagon road which is not alleged, either in the notice or complaint, to be an incline or excavation. No provision is made by the statute for constructing wagon roads, however necessary they may be to the successful operation of a mine. When liens are given for certain specified work, the rule of *expressio unius est exclusio alterius* applies (Phillips on Liens, 3d Ed. § 156), and hence no lien could attach for this class of work.

3. An account containing a lumping charge, in which is mingled an item for which no lien is given, will not support a lien; and the defect cannot be cured by oral evidence, by means of which the items for which a lien is given may be separated from those for which a lien is not given: 2 Jones on Liens, § 1419. In *Dalles Lumber and Mfg. Co. v. Wasco Woolen Mfg. Co.* 3 Or. 527, it was held that a corporation incorporated for the purpose of manufacturing and selling lumber could not acquire a lien for labor; and that, having joined in a lumping charge a claim for labor with that for material, no lien was thereby created. So in *Kezartee v. Marks*, 15 Or. 529, 16 Pac. 407, it was also held that a lumping charge for material furnished and used in the construction of a dwelling-house and fence did not create a lien upon the house, when that alone was sought to be charged by the lien. Following the rule established by these decisions, we hold that the claim for building the wagon road cannot be joined in a lumping charge with one for digging a ditch or running a tunnel, and, the claimant having joined them in his notice, no lien attached to the premises by reason thereof. Many other objections are made to the sufficiency of the notice, which we do not deem necessary to consider. It follows from the foregoing that the decree must be affirmed, and it is so ordered.

AFFIRMED.