## HUGHES *v.* LANSING.

[55 Pac. 95.]

1. MECHANIC'S LIEN A PRIVILEGE.—The right to assert and perfect a mechanic's lien is a statutory privilege (*Brown* v. *Harper*, 4 Or. 89), and may be exercised or waived as the lienor may prefer.

2. WAIVER OF LIEN.—The right to a mechanic's lien under the Oregon statutes may be waived by express agreement, as well as by neglecting to perfect the lien within the statutory time.

3. RELEASE OF LIEN—CONSIDERATION—UNILATERAL CONTRACT.—A payment by the owner of a building to his contractor in reliance upon a waiver by a materialman of his right to a mechanic's lien, and a like payment by the contractor to the materialman, pursuant to an understanding to that effect when the waiver was signed, is a sufficient consideration to support the waiver, although it did not by its terms require any payment by the contractor.

4. EFFECT OF A WAIVER.—A waiver of all claims for materials furnished to the contractor, and used in certain buildings, is equivalent to a waiver of the right or privilege of claiming a lien therefor against the property.

5. AGENT—STATUTE OF FRAUDS—CHARACTER OF LIEN.—The right of preserving and enforcing a mechanic's lien is not an interest in land, and an agent's authority to act with reference to it need not be in writing.

6. AUTHORITY OF AGENT.—Where an agent has authority to represent the principal in carrying on the business of manufacturing and selling lumber and in filing mechanics' liens, the agent's waiver of a mechanic's lien for lumber sold by him for the principal is binding on the principal.

7. MECHANIC'S LIEN—CONFUSED CLAIM.—A claim of mechanic's lien is unavailing for any purpose where it is impossible to segregate the lienable items from the nonlienable ones in the account set forth in the claim of lien : *Williams* v. *Toledo Coal Co.*, 24 Or. 426, cited.

8. PLEADING WAIVER.—It is proper to plead a waiver of a mechanic's lien as such rather than to set up the matters and things which gave rise to it by way of estoppel.

From Marion :   HENRY H. HEWITT, Judge.

Suit by John Hughes against E. Y. Lansing and others, in which the defendant J. C. Goodale answered, setting up a mechanic's lien against the defendant Lansing.   There was a judgment for the defendant Lansing, from which the defendant Goodale appeals.

AFFIRMED.

For appellant there was a brief over the names of *Sherman, Condit & Park*, and *Tilmon Ford*, with an oral argument by *Mr. D. C. Sherman* and *Mr. Ford*.

For respondent there was a brief over the names of *Shaw, Hunt & McCulloch*, and *Geo. G. Bingham*, with an oral argument by *Mr. Bingham*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is a suit to foreclose a mechanic's lien.   J. C. Goodale, a party defendant, answered, setting up a lien for lumber and materials furnished Plummer & Ault, which were used in several buildings constructed by them for the defendant E. Y. Lansing, as original contractors.   Lansing defends against this claim of lien by alleging, in effect, that Goodale, for a valuable consideration, waived his right thereto.   The facts upon which the alleged waiver is based are, in substance, as follows : Goodale was engaged in the manufacture and sale of lumber, and J. E. Baker was his agent, empowered to conduct and carry on the business at Salem, Oregon. Baker was authorized to sign checks, receipt for collections, and to act as his agent generally in and about the business, but had no written authority except for signing checks.   He had always attended to the necessary steps for perfecting liens, and as such agent sold the lumber

and materials to Plummer & Ault, stated the account with them, and subsequently signed and verified the claim of lien for record. He admits the signing of the alleged waiver, but explains the manner of its procurement on cross-examination as follows: "I didn't see Mr. Lansing the day that was given—that receipt. In the first place, we gave that receipt to Plummer & Ault for the amount paid. Mr. Pugh wrote out that receipt, and sent it down there, and I supposed it was just a receipt that day, until I went out there, and Mr. Lansing said that it was a waiver, and that was the first knowledge I had of what I had signed." The paper referred to is in the following language: "Salem, Oregon, March 15, 1894. Mr. E. Y. Lansing, Salem, Oregon: This is to certify that we, the undersigned lumbering company, do and hereby waive all claims for lumber or other materials furnished by us to Plummer & Ault (contractors), used in the construction of the various buildings erected, or being erected, on your premises south of Salem. J. C. Goodale, per Baker." E. Y. Lansing testified touching the matter as follows: "Well, the way that came was this: These small buildings—this cottage, barn, poultry house—was done under a verbal contract; and I had no way of protecting myself; and I said, when the payment became due to Plummer & Ault— I think it was $500 on this building. I said to Plummer—‡ In fact, all my transactions were with Plummer—I said, 'I want you to bring'— I wanted to have those bills brought in; and he said, 'I will go and get your bills, and get you $10,000 more bond, if you want it.' Mr. Pugh was present. He came back with this receipt: 'Received payment for all the lumber furnished on the Lansing job.' Mr. Pugh was there, and I said to him, 'That seems a very improper way to do;' and he said, 'I will have a waiver drawn;' and, on

his bringing me this waiver, I paid to Plummer & Ault the amount—I think it was $500—on the contract." Goodale's account with Plummer & Ault shows a credit of $500 of the same date as the alleged waiver. Pugh was charged, as Lansing's architect, with the duty of overseeing the work as it progressed, and determining whether it was performed according to contract.

1. Upon this state of the case, it is contended, in behalf of Lansing, that Goodale waived his lien upon the buildings erected under contract with Plummer & Ault. That a party may waive his right to a mechanic's lien upon structures for the building of which his labor or materials have been employed, is a matter about which there can be no controversy. The right to assert and perfect the lien given by statute is a privilege (*Brown* v. *Harper*, 4 Or. 89) which he may exercise or not, at his pleasure.

2. The statute (Hill's Ann. Laws, § 3669) provides that a person furnishing materials, etc., shall have a lien, and sections 3673, 3675 and 3677, the manner of preserving and perpetuating it. Now, while the statute gives the lien in the first instance for a specified time, without the assertion of any formal claim therefor, it is made incumbent upon the lienor, if he intends to preserve his lien, to make a record of such intention, and to bring suit thereon within the time prescribed, and, if he does not observe these regulations, the lien must be deemed to have lapsed. And he may, if he so desire, waive his right or privilege of invoking the protection which the statute has accorded him as well, by direct and positive stipulations.

Whether the paper above set forth constitutes such a waiver on the part of Goodale, we shall now inquire. Lansing objected to making a certain payment upon his contract with Plummer & Ault for the construction of

one of the buildings until their accounts for material were brought in, so that he might protect himself against any claims of lien based thereon. Among others, was the account for lumber with Goodale. It appears that Plummer, of the firm of Plummer and Ault, with the purpose of satisfying Lansing, first obtained from Goodale, through Baker, a receipt showing "payment for all lumber furnished on the Lansing job." To this Lansing made objections as improper, and thereupon Mr. Pugh, the architect, said: "I will have a waiver drawn," and presently returned with the paper in question, and the $500 was thereupon paid to Plummer & Ault. Upon the same day Plummer & Ault paid Goodale a like amount, which appears credited upon his account with them.

It is objected, first, that the purported waiver is a unilateral undertaking, without a corresponding obligation or promise upon the part of Lansing — that there was no consideration to support it, and for these reasons it is unavailing for the purpose in view in its procurement; and, second, that it is a transaction concerning real property in which the supposed agent, Baker, had no competent authority to bind Goodale, under the statute of frauds.

3.   If there was a consideration supporting the alleged waiver, then it is plain, without elucidation, that it cannot be characterized as a unilateral contract or undertaking. Lansing was charged, under the statute, with the duty of seeing that whatever payments he made to Plummer & Ault before the expiration of thirty days after the completion of the buildings were distributed among the laborers and material men according to their several demands; otherwise he would have subjected himself to a second payment of the same installment: Hill's Ann. Laws, §§ 3678, 3679. Being charged with such duty, it was manifestly his right to require Plummer & Ault to

bring in the bills that they had contracted on account of the buildings constructed, or in course of construction. First, the receipt of Goodale was produced, which proved unsatisfactory to Lansing, and then came the alleged waiver, and, upon the faith of that instrument, the $500 was paid to Plummer & Ault, and a like amount was paid by them to Goodale. Goodale undoubtedly understood, through Baker, that no money would be paid to Plummer & Ault by Lansing until the waiver was produced, else why should he first give a receipt showing "payment for all lumber furnished on the Lansing job," and, when that proved unsatisfactory, execute the alleged waiver? We think the payment of the $500 to Plummer & Ault, under the conditions then present, and the fact that Goodale secured the benefit of such payment, was ample and sufficient consideration to support the waiver upon the part of Goodale. The writing was directed to Lansing, and, although the consideration was not named in the instrument, yet it was well understood that it was given upon condition that Lansing would part with the $500, which he had good right to withhold for the present, and this undoubtedly constitutes a valuable consideration, and more especially as Goodale secured the benefit of the payment, or its equivalent. It was as though Goodale had requested the payment to be made to Plummer & Ault upon the condition of his relinquishment of his right to claim a lien for the lumber sold to them, and an acceptance on the part of Lansing by paying the money : See *Rand* v. *Grubbs,* 26 Mo. App. 591. This disposes, as we have intimated, of the unilateral feature claimed for the undertaking.

4. The waiver of all claims for lumber or materials furnished Plummer & Ault, and used in Lansing's buildings, is equivalent to the waiver of the right, or privilege, of claiming a lien therefor ; for, if Goodale has no claim

for lumber or material sold to Plummer & Ault, and used in the buildings, he can have no right to file or claim a lien thereon, based upon his account with them.

5. As it concerns the second ground of objection, it is clear that the mere right or privilege of preserving and perpetuating a mechanic's lien upon buildings is not an interest in land. The right may be allowed to lapse, or its duration may be terminated by a payment of the demand without a release ; and a written waiver, without the observance of any of the formalities of acknowledgement, etc., required touching instruments effecting land, will constitute an insuperable barrier to the enforcement of a lien thus waived, so that the essential characteristics attending instruments affecting real property are especially wanting, as it concerns the requisites of a valid waiver of the lienor's right or privilege. The identical question has been so decided in *Burns* v. *Carlson*, 53 Minn. 70 (54 N. W. 1055).

6. Mr. Baker, as the agent of Goodale, executed and filed the necessary claim to perpetuate the very lien the foreclosure of which Goodale is now insisting upon, and it appears that Baker had authority to this purpose, and to do and transact generally the business of Goodale in the manufacture and sale of lumber at Salem, Oregon. If he had such authority, it is clear that he was empowered, without any written authority thereto, to waive the right to said lien, as he undertook to and did do in the present instance.

7. It is claimed that some of the lumber obtained and used by Plummer & Ault in Lansing's building was furnished after the waiver, and that the lien for the price thereof could not be affected thereby. But, however that may be, it is utterly impossible to segregate the lienable items, if such they be, from the nonlienable items, in the account set forth in the claim of lien, which

is therefore unavailing for the purposes intended : *Williams* v. *Coal Co.*, 25 Or. 426 (36 Pac. 159, 42 Am. St. Rep. 799).

8.   The instrument in question, being founded upon a valuable consideration, constituted, as we have seen, a waiver on the part of Goodale of his right or privilege to claim or assert his lien against the buildings constructed by Plummer & Ault for Lansing, and it was, therefore, proper for Lansing to plead it as such, instead of setting up the matters and things which gave rise to it, by way of estoppel :   28 Am. and Eng. Enc. Law, 534. Other questions were presented, but the conclusions here reached render their consideration unnecessary.   The decree of the court below will be affirmed.

<div align="right">AFFIRMED.</div>

---

<div align="center">

Decided 24 October; rehearing denied 19 December, 1898.