Argued June 16, decided June 30, rehearing denied October 6, 1908.

## ALDERSON v. LEE.

[96 Pac. 234.]

LOGS AND LOGGING—LIENS—STATUTES.

1. Under Section 5679, B. & C. Comp., providing that any person, who shall permit another to go on his timber land and cut therefrom saw logs, spars, piles, or other timber, has a lien on the property cut for the purchase price thereof. A seller of timber has no lien on lumber manufactured from any portion thereof, but only on the logs or timber sold.

SAME—LIEN NOTICES.

2. Section 5678, B. & C. Comp., provides that every person performing labor, or who shall in any manner assist in the manufacture of lumber, has a lien on such lumber while remaining at the yard for manufacture. *Held*, that where lien claimants for labor in the manufacture of lumber specified the character of the labor and contract price in their lien notices, they were not void as to the lienable lumber in the millyard, because they also attemped to cover other lumber not so located, which claim could be treated as surplusage.

SAME—NATURE OF SERVICE.

3. Laborers performing work in, around, and about a lumber mill, in some manner connected with and incidental to the conversion of timber into lumber, are entitled to a lien under Section 5678, B. & C. Comp., declaring that every person performing labor, or who shall in any manner assist in the manufacture of lumber, has a lien thereon while remaining in the yard where manufactured.

SAME—DESCRIPTION.

4. Section 5678, B. & C. Comp., gives a lien on lumber for work done in the manufacture, and Section 5683, requires that the property on which a lien is claimed shall be described with reasonable certainty. *Held*, that where it was not controverted that the logs and lumber on which a lien was claimed could easily have been found from the description given in the lien notice, and it was not claimed that there were any other logs or lumber in the vicinity of the mill, or on the particular section of land where the property was located, except that on which the lien was claimed, the description was sufficient, though the logs were not described by marks.

SAME—RIGHT TO LIEN—ASSIGNMENT.

5. The right to a laborer's lien on logs and lumber, given by Section 5678, B. & C. Comp., is personal, so that any assignment thereof, before record of the lien, carries only the chose in action, and not in the lien.

SAME.

6. Where certain laborer's lien notices, and assignments indorsed thereon to plaintiff, were signed by the lien claimants simultaneously, but it was understood and agreed that the liens should not be delivered to plaintiff until after they were placed on record, and they were not, in fact, delivered to him until recorded, the assignments carried the liens, as well as the debts, for which the liens were claimed, and this, notwithstanding plaintiff's attorney was also attorney for the claimants, and prepared and presented the liens for record.

From Josephine: HIERO K. HANNA, Judge.

Statement by MR. COMMISSIONER KING.

Plaintiff, Samuel Alderson, under a written contract, sold to E. G. Lee, and B. F. Lee, known as Lee Bros. Co., 427,235 feet of saw logs, the stumpage for which amounted to $363.15, upon which, within the time re- quired by law, a lien was filed by plaintiff upon 100,000 feet of the unsawed logs, and upon 100,000 feet of lum- ber made from logs purchased from him, 70,000 feet of which was at the mill where delivered and sawed, while 30,000 feet had been removed to the railway track about one mile distant. Thirteen others had performed labor of various kinds in and about the mill and upon the tim- ber and lumber mentioned, upon which liens were filed, and, before the institution of this suit, assigned to plain- tiff and included herein, which, with the plaintiff's indi- vidual claim, aggregates about $1,400. The liens were prepared by H. D. Norton, as attorney for the claimants, including plaintiff, and, after being properly signed and verified, were indorsed to plaintiff, December 22, 1905, as follows: "The within lien is hereby assigned to Samuel Alderson for foreclosure and collection." The record discloses that the indorsements were made and signed before the liens were filed, with the understand- ing that the liens should not be delivered to the assignee or become effective until recorded. With this under- standing the lien notices were, on the same date, taken by the attorney who prepared them to the clerk's office, and there filed and recorded, after which they were de- livered to plaintiff, followed by the instituting of this suit for the foreclosure thereof, joining as defendants, with Lee Bros. Co. the firm of H. C. Kinney and H. L. Truax, known as Kinney & Truax Co., on account of an interest claimed by them in the property involved. On the 7th of December, 1905, but within the time allowed by law for filing the liens involved, an action was com- menced against the Lee Company, in the justice's court,

by the Kinney & Truax Co. for $210, and an attachment was issued therein upon some of the lumber described in the liens, a part of which was at the mill and a part at the railroad track, and placed for service in the hands of John Randle, as constable, after which the lumber was sold under execution and bid in by H. L. Wilson. On December 20, 1905, and within the time allowed by law for the filing of liens, defendant Wilson commenced an action in the justice's court against Lee Bros., on which judgment was recovered nine days later for the sum of $148; and, on execution issued thereon, all the lumber of defendant Lee Bros. was sold, and by him purchased at the execution sale, the proceeds of which were applied in the satisfaction of the judgments obtained. A supplemental complaint, alleging these facts, was afterwards filed herein, joining as defendants H. L. Wilson and John Randle, with the other parties named, in which a temporary restraining order was issued, enjoining Wilson and Randle, pending this suit, from removing any part of the lumber from the premises upon which it was situated. The cause was tried, resulting in a decree for plaintiff, in which a judgment was entered against the Lee Company for the sum of $1,407.13, and decreeing that all the logs specified in the liens, together with the lumber described therein, situated at the millyard of the Lee Company, be sold, and the proceeds applied pro rata upon the liens involved, except the first two liens specified in the complaint, and giving judgment against the Lee Bros. Co. for any deficiency remaining after the sale and application of the proceeds as directed, and further decreeing the rights of the defendant Wilson, inferior and subsequent to those of plaintiff. From this decree Wilson appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. William C. Hale.*

For respondent there was a brief and an oral argument by *Mr. H. D. Norton.*

Opinion by MR. COMMISSIONER KING.

It is insisted that the suit cannot be maintained upon any of the lien notices filed in evidence, on the ground (1) "that part of the lumber sought to be liened had, previous to the execution of the lien notices, been removed a mile or more from the yard where manufactured, and a part only remained upon the yard where manufactured; and (2) the lien notices contained no statement of the amount chargeable upon the non-lienable lumber removed from the yard, nor of the amount chargeable against the lumber remaining upon the yard;" and (3) "that the lien notices, and each thereof, failed to identify any lumber, sought to be charged with a lien, with sufficient or any certainty whereby the same could be identified and segregated"; (4) that the lien of plaintiff upon the logs is void, for the reason that it includes therein unlienable property; (5) that the notice of liens were all assigned before being filed, and accordingly insufficient.

1. The statute provides, in effect, that every person performing labor upon, or who shall assist in obtaining or securing, saw logs, spars, piles, or other timber, has a lien upon the same for the work or labor done thereon, or in obtaining and securing the same, including all persons who may assist in or about a logging camp (Section 5677, B. & C. Comp.) ; and that any person who shall permit another to go upon his timber land and cut thereon saw logs, spars, piles, or other timber, has a lien on the property cut for the purchase price thereof (Section 5679, B. & C. Comp.) ; also that every person performing labor, or who shall in any manner assist, in the manufacture of lumber has a lien upon such lumber while remaining at the yard where manufactured (Sec-

tion 5678, B. & C. Comp.), provided that the same is
filed with the county clerk of the county in which the
work is done, within 30 days after the close of the
work or labor mentioned in Sections 5677 and 5678. The
lien notice of plaintiff was given to cover the agreed
price of logs sold to Lee Bros. Co. under an express con-
tract, but includes therein a pretended lien, not only upon
the logs, but upon all lumber manufactured from any
portion of the timber sold. It is clear from the statute
that a lien is not given, under such circumstances, upon
any property except the logs, spars, piles, or other timber
conveyed: Section 5679, B. & C. Comp. This section
appears to be the only section of the Code granting such
lien, and specifies only the property last mentioned. It
is well settled that when a statute purports to give a
lien upon property therein specified, the well-known rule
of *"expressio unius est exclusio alterius"* applies. In
other words, the enumeration of the property upon which
a lien may be held, excludes anything not included there-
in: *Williams* v. *Toledo Coal Co.* 25 Or. 426, 432 (36 Pac.
159: 42 Am. St. Rep. 799). And the same rule applies
to all the liens involved, so far as affects the lumber
situated outside of the yard where manufactured: *Dex-
ter Horton & Co.* v. *Sparkman,* 2 Wash. 165 (25 Pac.
1070).

2. In this connection it is urged that since the lien
notices do not contain a statement of the amount of
labor performed on the lumber remaining in the yard,
nor on the lumber removed to the railroad track, suffi-
cient to enable a segregation thereof, and includes non-
lienable with lienable property, they are void. We think
it clear, however, that the reasons given for the rule
announced in *Williams* v. *Toledo Coal Co.* 25 Or. 426
(36 Pac. 159: 42 Am. St. Rep. 799), and *Hughes* v. *Lan-
sing,* 34 Or. 118 (55 Pac. 95: 75 Am. St. Rep. 574) in
support of this contention, are wanting in the case under

consideration. The lumber upon which the liens are sought is in fact segregated, and the claims for labor, as allowed by the circuit court, each clearly specify the character of the labor and contract price therefor, and come within the provisions of the statute covering the character of labor designated therein. The lienable lumber is at the mill, and the part not subject to liens is at the railroad track, about one mile distant; and the reference to the latter in the lien notices is mere surplusage, as much so as if it had referred to cattle or horses belonging to the Lee Bros. Co., ranging in the vicinity: 20 Am. & Eng. Enc. Law (2d ed.) 508; *Dexter, Horton & Co.* v. *Sparkman,* 2 Wash. 165 (25 Pac. 1070).

3. Omitting this surplusage, we have remaining the logs and lumber left at the mill, which, without attempted contradiction, are shown to be the only logs or lumber situated in the millyard. If there were logs and lumber in the same yard belonging to the same parties not subject to a lien or similar property there owned by others, appellant's contention in this respect might be tenable. The liens, and evidence bearing thereon, show that the work and labor of all, except the first two liens specified in the complaint, was performed in, around and about the mill, and in some manner connected with and incidental to the converting of the timber into lumber; thereby clearly coming within the reason and spirit of the statute: 19 Am. & Eng. Enc. Law (2 ed.) 534.

4. Nor is the contention tenable, that the description of the liened property is insufficient. It is not claimed there were any other logs or lumber in the vicinity of the mill or on the section of the land where this property is found, except that claimed herein; and it is shown, by uncontroverted testimony, that the property could easily have been found from the description given. Our statute (Section 5683) requires only that the property be described with reasonable certainty. True, the form

there given seems to indicate that the logs should be designated by marks, and this might, in some instances, be essential to a valid lien, such as where the defendant's logs may be on the same tract of land, or intermingled with those of other owners, or with logs non-lienable; but, where no other property is to be found sufficiently near as to cause confusion, the reason for this suggestion in the form given ceases. It is obvious, from the language of the section in which the form is given, that the form, as there set out, is not mandatory, but sufficiently complied with if given in substance. And no definite rule can be given as to when it may be deemed substantially followed. This must depend upon the facts and circumstances in the cases as they may arise. If required that a specific description be given in every instance, the purpose of the law would be defeated. Any description from which a stranger, aided by the testimony adduced at the trial, could, with reasonable diligence, locate the property is sufficient to meet the requirement of the law: 8 Ency. Ev. 666; *Dexter, Horton & Co.* v. *Sparkman,* 2 Wash. 165 (25 Pac. 1070).

5. Another and more difficult question, and one not free from doubt, relates to the time when the assignment of the lien notices to plaintiff took effect. The rule is that the right to perfect a lien, given by statute, is a privilege limited to the claimant, and that any assignment thereof before record, carries only the chose in action constituting the basis of the intended lien. To constitute a lien, every requirement of the statute must be complied with; and, until such compliance, no lien is created: *Brown* v. *Harper,* 4 Or. 89; *Sutton* v. *The Victorian,* 26 Or. 194 (41 Pac. 1103); *Hughes* v. *Lansing,* 34 Or. 118, 121 (55 Pac. 95: 75 Am. St. Rep. 574). If then, as a matter of law, the assignments were fully executed before record thereof, the attempted liens come within the rule, and are unavailable; and plaintiff would

have received choses in action only with respect to which his remedy would be in law, and not in equity. The testimony of the clerk is to the effect that the assignment was indorsed upon each lien when delivered to him, on December 22, for record. To constitute a valid assignment, when in writing, it must be delivered to the assignee. A mere indorsement on the instrument assigned is insufficient (4 Cyc. 41), and the transmission and time of delivery may be shown by parol: 8 Ency. Ev. pp. 664, 726, 744: 17 Cyc. 640. Again, there is added to the words constituting the assignment the statement that it was assigned "for foreclosure and collection," the legal effect of which, so far as permitting parol testimony in explanation thereof, under the rules of evidence, is similar in effect to the statement in the power of attorney alluded to in *First Nat. Bank* v. *Miller,* 48 Or. 587, 591 (87 Pac. 892), in which oral testimony was held admissible to explain the intent at the time and purpose of its execution. See also 8 Ency. Ev. 741.

6. Explanatory testimony was adduced at the trial, showing that, while the signing of the lien notices, and assignments indorsed thereon, by the respective parties were simultaneous, it was understood and agreed that the liens should not be delivered to the plaintiff, until after they were placed of record, and that they were not in fact delivered to him until recorded. This being the status of the transfer of the liens, the assignment became effective as of the date of the delivery, prior to which, the liens had attached and were accordingly assignable, and having been regularly assigned, were subject to a foreclosure by plaintiff as assignee thereof: *Falconio* v. *Larsen,* 31 Or. 137 (48 Pac. 703: 37 L. R. A. 254). It is urged, however, that the liens, when signed and indorsed, were delivered to plaintiff's attorney, and by him handed to the clerk for record; but it clearly appears that they were not delivered to him as the attorney for

plaintiff solely. True, he was attorney for plaintiff in the sense of preparing his lien and taking it to the clerk's office for record, but he was attorney also for the other lienholders for the same purpose. Until the liens were all properly filed, he remained the attorney of each with respect to the interest of each, and to that extent only; and not until after the filing of the instrument does it appear that he was authorized to deliver the assigned instruments to the plaintiff or to sue upon them, at which time it appears he, as agent for the assignors, was authorized to and did deliver the instruments to plaintiff, after which he, as his attorney, instituted this proceeding. Frequent instances occur where one person may properly become an attorney or agent of many persons at the same time, with respect to transactions between or by them, in which all may have an interest, without the authority under such agency extending to every transaction growing out of the work thus performed, and in which the extent of the authority exercised, including all dealings and understanding had between them and with each other, with reference thereto, may, by parol, be established at the trial in which any of the dealings had may come in question: *McLeod* v. *Despain*, 49 Or. 536 (92 Pac. 1088). The presumption of delivery, therefore, following the statement by the clerk, to the effect that the assignment was indorsed on the liens when received for record, is overcome by the undisputed testimony subsequently given, showing the actual delivery to have been made after the record thereof.

Finding no error in the record prejudicial to appellant, the decree of the court below should be affirmed.

AFFIRMED.