Argued June 25, affirmed July 14, rehearing denied September 8, 1914.

# LOUD v. GOLD RAY REALTY CO.

### (142 Pac. 785.)

**Mines and Minerals—Mining Lien—Assignment—Rights Acquired.**

1. The right to a mining lien, being a creature of the statute, the right to perfect the lien is limited to the persons who do the work or furnish the material or supplies, and an assignment before the lien is recorded carries title only to the debt or chose in action, and not to the right to perfect the lien.

[As to who is a "laborer," "workman" or "servant" within the meaning of statutes relating to liens, see note in 32 Am. Rep. 264.]

**Mines and Minerals—Mining Lien—Enforcement—Weight of Evidence.**

2. In a suit to foreclose mining liens, evidence examined and *held* to show that an assignment of the liens, though dated prior to the date of the recording of the liens, was in fact executed subsequent to such record.

**Mines and Minerals—Mining Liens—Verification of Claim.**

3. Under Section 7445, L. O. L., providing that the statement for a lien on mines and mining property shall be verified by the oath of the claimant or some other person having knowledge of the facts, an affidavit that the affiant caused the notice of lien to be prepared at the instance and request of the claimant; that he had personal knowledge of all the facts set forth in the lien, and knew the facts to be true—was a sufficient verification.

**Mines and Minerals—Mining Liens—Enforcement—Sufficiency of Evidence.**

4. In a suit to foreclose liens on a mine and mining property, evidence *held* sufficient to show *prima facie* that the claims on which the liens are based were not paid.

**Mines and Minerals—Mining Liens—Effect of Prior Claims.**

5. A sale of mining property on foreclosure of a mortgage extinguishes the liens of the mortgagee so that they do not affect a subsequent proceeding for a lien against the property for labor and supplies.

**Mines and Minerals—Mining Liens—Consent of Owners—Notice.**

6. Where labor and supplies for a mine were furnished to a lessee, whose lease was recorded as required by Section 7444, L. O. L., and the owner had not caused to be posted at not less than three conspicuous places in the mine a notice in writing stating the name of the lessee, and that the owner thereof would not be responsible for any debts contracted by the lessee or other person than the owner, as required by the section referred to, the persons furnishing the labor and supplies were entitled to liens against the mine.

[As to abandonment and forfeiture of mining claims, see note in 87 Am. St. Rep. 403.]

From Jackson: FRANK M. CALKINS, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is a suit in equity by G. Loud against the Gold Ray Realty Company, a corporation, the Grants Pass Banking & Trust Company, a corporation, the Enterprise Mining Company, a corporation, Condor Water and Power Company, a corporation, Walter S. Brown, C. R. Ray and Frank H. Ray, W. A. Jones and W. C. Hale, to foreclose liens held by the plaintiff upon a mine, and the improvements and buildings thereon, etc. The court below rendered findings and a decree in favor of the plaintiff for most of his claims. The defendants appeal. The facts are stated in the opinion.        AFFIRMED.   REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Alfred E. Reames, Mr. Alfred A. Hampson* and *Mr. Robert G. Smith,* with oral arguments by *Mr. Reames* and *Mr. Hampson.*

For respondent there was a brief and an oral argument by *Mr. H. D. Norton.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit in equity to foreclose 27 separate claims of lien upon a quartz mine, comprising the north half of the southwest quarter and the south half of the northwest quarter, section 16, township 36 south, range 4 west, of the Willamette meridian, together with the mining apparatus, equipment, quartz-mill, concentrator, compressor, air drills, electric machinery, and other equipment for the working of the mine and reduction of ores as well as ditches, ditch rights and water rights, used for mining purposes and con-

nected with and appurtenant to said mine, said mine having formerly belonged to the Enterprise Mining Company. The complaint contains 116 pages, and, as no question is raised as to the sufficiency of any of the pleadings, we shall not make any summary thereof. Answers and replies were filed. The plaintiff had a claim against said mine for work done by him, and he filed a claim for a lien upon said mine for the amount due him thereon. Twenty-six other persons had claims against said mine, either for labor or supplies, and a claim of lien for each of said persons was made out and filed. The plaintiff claims that after each of said claims was made out and filed, each lien claimant assigned his respective claim and lien to him for collection thereof. The court below made findings and rendered a decree in favor of the plaintiff on each of his 27 causes of suit, except the ninth, the twelfth and the twenty-third thereof. The court below held the supposed liens pleaded in the ninth, the twelfth and the twenty-third causes of suit to be invalid.

The contentions of the defendants, on the appeal, are substantially as follows:

First, that the liens were assigned to the plaintiff, Loud, who was also one of the lien claimants, prior to the time when the liens were perfected by filing the notices thereof with the county clerk.

Second, that three of the notices of lien were verified by George Loud in the absence of the lien claimants.

Third, it is claimed that there is no proof as to various of the liens, that the same have not been paid.

Fourth, the defendants assert that the reasonable value of the labor or of the supplies and its beneficial value to the property is the basis of the right of lien, and not the agreed wages or the agreed purchase price of the materials.

Fifth, the defendants claim to have some prior lien under the decree wherein the receiver's sale was had, etc.

1. The defendants contend that the various claimants assigned their respective claims to the plaintiff, Loud, *before* the claims for liens were filed for record, and that, for this reason, they are invalid as liens. The right to a lien of this kind is a creature of the statute, and the right to perfect such a lien is limited to the persons who do the work or furnish the material or supplies: *Brown* v. *Harper,* 4 Or. 92; *Alderson* v. *Lee,* 52 Or. 98 (96 Pac. 234); Phillips, Mechanics' Liens (3 ed.), § 54. After the lien has been perfected by the filing and recording of a proper claim of lien, it may be assigned. Courts in some states hold that persons entitled to liens of this kind may assign their claims, and that their assignees may perfect the liens after the assignment: Rockel, Mechanics' Liens, § 165. However, the rule is settled in this state that, if a person has a right to perfect a lien of this nature, and he assigns his debt or claim to another, his assignee takes title to the debt, but has no right to perfect the lien.

In *Alderson* v. *Lee,* 52 Or. 98 (96 Pac. 234), the court says, *inter alia:*

"If, then, as a matter of law, the assignments were fully executed before record thereof, the attempted liens come within the rule and are unavailable; and plaintiff would receive choses in action only with respect to which his remedy would be in law, and not in equity."

In this case, if the assignments to the plaintiff were fully executed before the claims for the liens were made out and filed for record, the plaintiff took noth-

ing by the assignments, but the debts or choses in action.

2. The plaintiff contends that the claims for the liens were all properly made out and filed for record *before* the assignments were made. The claims for liens were all filed for record and recorded on September 26, 1911. The assignments were all made by one written instrument, and this document bears date of September 25, 1911, the day *before* the claims were recorded. The plaintiff contends that the date of the assignment is erroneous, and that it was not written or signed until *after* the claims for liens had been recorded. The date of a writing is *prima facie* evidence that the paper was executed on that day. When the plaintiff was first on the stand as a witness, he testified that the assignment was made before the claims for liens were recorded, and it took much leading by his counsel to get him to admit that he was in error, and that the assignment was executed *after* the liens were recorded. The plaintiff called as witnesses several of the men who had assigned their liens to the plaintiff. Some of these witnesses testified, *at first,* that they assigned their claims to the plaintiffs before the claims for liens were recorded; but counsel for the plaintiff succeeded, finally, in getting each of them to testify that the assignment of the claims was made *after* the claims for liens had been recorded. Some of the plaintiff's witnesses testified from the first that the claims for liens were recorded before the assignment was made to the plaintiff.

The written assignment that the parties executed (omitting the signatures) is as follows:

"We, the undersigned, claimants against the Enterprise Mine, situated near Woodville, in Jackson County, Oregon, having *filed our respective liens with*

*the county clerk of said county,* do hereby respectively assign said liens, as well as the claims and demands therein set forth, unto George Loud, for the purpose of collection, hereby authorizing and empowering the said George Loud, in his own name, to maintain any necessary suits or proceedings for the recovery of said sums of money, as well as the foreclosure of said liens, and authorizing him to incur expenses incident thereto. In witness whereof, we have hereunto set our hands, this 25th day of July, 1911.''

This assignment recites that the parties executing it *had filed their respective liens* with the county clerk of Jackson County. It was recorded on September 9, 1911.

H. D. Norton, attorney for the plaintiff, testified that he wrote all of the claims for the liens, and went to Jacksonville with the plaintiff, when they were filed with the county clerk for record. He testifies that he also wrote said assignment of said liens, and that the assignment was written and executed *after* the claims of liens had been filed for record with the county clerk. He says that he wrote it and sent it to the plaintiff to get the parties to sign it, and the plaintiff returned it to him signed by all the parties except Mr. Wade, and that Wade signed it in his office, and he then sent the assignment to the clerk at Jacksonville to be recorded. Mr. Norton must have known whether this document was written or executed before the liens were recorded, or not. He testifies positively that it was written and executed *after* the claims for lien had been filed for record. The assignment was filed for record September 9, 1911. Each of the claims for lien, except three, is signed and sworn to by the claimant, without any statement to indicate that the account upon which it is based had been assigned to anyone. The plaintiff verified three of the claims for liens for

the reason that he had knowledge of the facts stated in the claims; but these three claims were made out and verified as the claims of the persons doing the work, and not as claims of the plaintiff as assignee.

In the case of *Alderson* v. *Lee,* 52 Or. 98 (96 Pac. 234), the fact was that, when the claims for liens were presented to the clerk to be filed for record, there was indorsed on each claim an assignment thereof, signed by the claimant.   Commenting on this fact, the court in that case, says:

"To constitute a valid assignment, when in writing, it must be delivered to the assignee.   A mere indorsement on the instrument assigned is insufficient (4 Cyc. 41), and the transmission and time of delivery may be shown by parol. * * Explanatory testimony was adduced at the trial, showing that, while the signing of the lien notices, and assignments indorsed thereon, by the respective parties were simultaneous, it was understood and agreed that the liens should not be delivered to the plaintiff until after they were placed of record, and that they were not in fact delivered to him until recorded.   This being the status of the transfer of the liens, the assignment became effective as of the date of the delivery, prior to which the liens had attached, and were accordingly assignable, and, having been regularly assigned, were subject to a foreclosure by plaintiff as assignee thereof."

While there are some circumstances tending to show that the assignment to the plaintiff was made before the claims for liens were recorded, yet we find that the preponderance of the evidence shows that the assignment was written and executed *after* the liens were perfected by being recorded.

3. Three of the claims for liens were verified by the plaintiff for the lien claimants.   These liens are based on Section 7444, L. O. L., relating to liens upon mines and mining property.   Section 7445, L. O. L., provides

72 Or.—11

that the statement for such a lien shall be verified by the oath of the claimant, "or some other person having knowledge of the facts." In order that a person other than the claimant may verify the claim, he must "have knowledge of the facts."

The plaintiff verified the claim of D. N. Quinn. The verification is as follows:

"State of Oregon,
    County of Jackson,—ss.

"I, G. Loud, being first duly sworn, on oath, depose and say: That I caused the foregoing notice of lien to be prepared at the instance and request of D. N. Quinn, the above-named claimant; that I have personal knowledge of all the facts set forth in said lien, and know the facts therein set forth to be true, and that the statement of the claimant is true and correct, and the sums therein claimed are due the claimant as in said lien stated, over and above all just setoffs and counterclaims."

Said verification was subscribed and sworn to before the county clerk of Jackson County. We think that said verification is sufficient. The other verifications made by the plaintiff are in substantially the same form, and are sufficient.

4. We think that there is *prima facie* proof that the claims were not paid. The claims were placed in the hands of the plaintiff for collection some days before the liens were filed. We think that there is a sufficient showing that the claims were not paid, taking into consideration all of the evidence relating thereto, and that a *prima facie* case was made as to each of the liens and claims allowed by the court below. The defendants offered no evidence tending to prove that the claims were not correct. The plaintiff testified on page 140 of the evidence that no payments had been made on these claims since they were filed and assigned

to him.   Mr. Jayne, the manager and superintendent
of the mine, who employed the men, testified to the
accounts of the claimants and concerning payments
made, etc.

5. It appears by the stipulations of the parties, set
forth on pages 155 to 157 of the evidence, that in 1909,
the Condor Water & Power Company brought a suit
against the Enterprise Mining Company to foreclose a
mining lien for supplies, and that the Grants Pass
Banking & Trust Company brought a suit to foreclose
a mortgage upon the said mine; that these two cases
were consolidated and a receiver was appointed for
said property, and upon the rendition of decrees in
said suits the property of said Enterprise Mining
Company (being the property described in the com-
plaint) was ordered to be sold to pay the decrees ren-
dered in said suits and costs; that said property was
sold by the receiver for less than sufficient to pay said
decrees; that said sale was confirmed, and a receiver's
deed for said property was made to the purchaser of
said property, the said purchaser to whom said deed
of conveyance was made being the Gold Ray Realty
Company, one of the defendants, and that the decree
in favor of the Grants Pass Banking & Trust Com-
pany, above referred to, was assigned to the defend-
ant Frank H. Ray, said assignment being dated April
20, 1911.   Said sale extinguished the liens that the
Condor Water & Power Company and the Grants Pass
Banking & Trust Company had on said mining prop-
erty, and vested the title to said property in the pur-
chaser, the Gold Ray Realty Company, free from any
liens thereon, for the amounts remaining unpaid on
the decrees in favor of the Condor Water & Power
Company and the Grants Pass Banking & Trust Com-
pany.   The balances owing on said decrees are due

from the Enterprise Mining Company, and have no bearing upon this case.

6. The labor and supplies for which the liens are claimed were furnished to Walter S. Brown, who did not own the mine, but who was working said mine as lessee, or under a contract with the owner of the mine. The contract under which Brown was working said mine was recorded in the mining records as provided by Section 7444, L. O. L. Persons working at said mine or furnishing supplies therefor, at the request of Brown, had a right to perfect and hold liens upon the mine for their labor or supplies, *unless* the owner of the mine posted or caused to be posted at not less than three conspicuous places upon the mine, at or near the place thereon where the same was being worked, a notice in writing signed by him, stating the name of the lessee or other person than the owner operating the mine, and that the owner thereof would not be responsible for any debt or debts contracted by the lessee or other person than the owner, in connection with the operation or working of such property.

There is no evidence that the notices referred to *supra,* were posted as required by Section 7444, L. O. L., and hence the said mining property was subject to liens for labor done for and supplies furnished to Walter S. Brown, the person who was operating or working said mine, under said contract with the owner thereof.

We have read and considered the evidence and the arguments and the briefs submitted by the parties, but we find no error in the decree of the court below.

The decree of the court below is therefore affirmed.

AFFIRMED.   REHEARING DENIED.

MR. JUSTICE EAKIN, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.