Argued and submitted July 29, 1981, affirmed November 24, 1982

# TRI-CITY BUILDING CENTER, INC.,

*Appellant,*

*v.*

# STONERIDGE DEVELOPMENT COMPANY et al,

*Respondents.*

(No. 39-204, CA 19536)

653 P2d 1012

Gerald R. Pullen, Portland, argued the cause and filed the brief for appellant.

Michael B. Wallstein, Portland, argued the cause for respondent Stoneridge Development Company. With him on the brief was Bernard, Hurley, Crawford & Kneeland, Portland.

Michael S. Fryar, Gresham, waived appearance for respondent Richard Wanke.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

BUTTLER, P. J.

## BUTTLER, P. J.

This is an action under ORS 87.060, to foreclose a construction lien against an apartment complex owned by defendant Stoneridge Development Company (Stoneridge). Plaintiff, a building supply company, appeals a decree awarding it judgment against defendant for $7,017.21, rather than the $47,746.89 it claimed. The court found that plaintiff had released its lien rights for part of the time period at issue, and that the balance due on materials supplied post-release was $7,017.21.[1]

Plaintiff makes two attacks on the decree. First, it argues that the release of liens was not supported by consideration, and therefore was not valid. Second, it argues that the trial court erred in computing the balance due plaintiff for materials supplied during the period following that for which plaintiff had released its lien rights. On *de novo* review, we affirm.

Beginning in January, 1978, plaintiff supplied materials to Stoneridge's contractor, defendant Richard L. Wanke, doing business as Cascade Investment Company (Wanke), for the Stoneridge project as well as for other of Wanke's projects. By the end of April, 1978, Wanke owed plaintiff over $40,000 for materials already delivered for the Stoneridge job, even though Stoneridge had paid Wanke for a portion of those materials. Mr. Womack, plaintiff's credit manager, informed Stoneridge in early May that that amount was past due. After receiving that information, Stoneridge refused to pay Wanke any accrued sums payable under its contract with him, and threatened to terminate him and to hire another contractor unless plaintiff agreed to release the lien rights that had accrued through April 27, 1978. If plaintiff agreed to release its lien rights, Stoneridge would make the payments then due and to become due under its contract with Wanke by checks made

---

[1] The court also awarded Stoneridge attorney fees of $6,000. It found Stoneridge to be the "prevailing party" under ORS 87.060(4), because it offered twice to compromise the suit, pursuant to ORS 17.055, for $7,017.21, the exact amount of plaintiff's judgment. Stoneridge also admitted in its answer that it owed plaintiff that amount.

On appeal, plaintiff contends only that it should be awarded attorney fees, because it is entitled to a judgment for more than the amount tendered by Stoneridge. *But see Carlson v. Blumenstein*, 293 Or 494, 651 P2d 710 (1982).

payable jointly to Wanke and plaintiff. On May 4, 1978, Wanke obtained the written lien release from plaintiff and, at the same time, gave plaintiff a security interest in all of his inventory, equipment and accounts receivable to secure a promissory note for $41,325.36.

Between May 8 and July 1, Stoneridge paid $32,081.45 to plaintiff and Wanke jointly. During the same time period, Wanke purchased an additional $20,780.58 of materials from plaintiff for the Stoneridge project. Of the $32,081.45 it received, plaintiff applied only $4,097.32 to the Stoneridge account, refunded some to Wanke and credited some to Wanke's debts unrelated to the Stoneridge project.

The trial court found that the release was valid and that plaintiff was not entitled to foreclose for any amounts owed to it as of April 28, 1978. However, it found that of the $32,081.45 paid after the lien was released, $18,318.08 was owed by Stoneridge to Wanke for work performed under the contract before the lien release was executed. Therefore, the court concluded that none of that $18,318.08 should be applied in payment of post-release purchases from plaintiff. The balance paid, $13,763.37, was to be applied against post-release purchases. Because a total of $20,780.58 worth of materials was purchased after the release, the balance due plaintiff was $7,017.21. The trial court allowed plaintiff a lien in that amount.

■ In finding consideration for the lien waiver, the court's letter opinion stated:

> "Plaintiff knew that if the lien waiver was not executed, Wanke would be terminated by Stoneridge. Upon that occurrence, Wanke would have no way to pay the $41,352.26 or the debts from other jobs. Also by signing the waiver Wanke would continue to make purchases from plaintiff for the Stoneridge ($20,780.58) and other projects and Stoneridge would pay plaintiff sums due Wanke at that time ($18,318.08 paid May 8 and 10) without further adieu. From these factors it would appear to me that plaintiff did receive consideration for the waiver."

We agree with the trial court's reasoning, but note additional factors that lead us to conclude that plaintiff got what it bargained for. After Stoneridge learned that

Wanke had not been paying plaintiff for materials supplied to the Stoneridge project, it decided to terminate its contract with Wanke. Wanke advised plaintiff that if Stoneridge terminated the contract, Wanke would not be able to continue in business, leaving plaintiff unpaid for materials supplied Wanke for this and other jobs. At that time, plaintiff could have asserted its lien claims for $41,352.26 and, presumably, collected that amount. Stoneridge would have been out $23,034.18, in addition to the $18,318.08 it then owed Wanke. Instead of pursuing that course, plaintiff obtained a security interest in Wanke's inventory, equipment and accounts receivable, and released its lien on the Stoneridge property. Plaintiff's credit manager testified that those things were done to persuade Stoneridge to make payments due Wanke directly to plaintiff.

Plaintiff contends that it was largely at Wanke's urging that it agreed to release its lien on the Stoneridge project and that, because of Wanke's pleas, the release was void as the product of economic duress. Whatever may have been its primary reason for making the arrangements it did, plaintiff got what it bargained for, and that is sufficient consideration to support the release — more than existed in *Hughes v. Lansing,* 34 Or 118, 55 P 95 (1898), where the contractor demanded a lien waiver from its material supplier before it would release sums due its subcontractor. The court there held that because, by executing the waiver, the material supplier secured the benefit of payment to the subcontractor, there was consideration to support the waiver. By executing the lien release here, plaintiff not only secured itself the benefit of Stoneridge's payments to Wanke, but also gained the advantages of keeping Wanke in business and of additional purchases by Wanke for the Stoneridge project. It also gained the benefit of being designated a joint payee on checks issued to pay Wanke under its contract with Stoneridge. That the arrangements may not have been as advantageous as plaintiff had hoped does not vitiate the release.

Plaintiff argues next that, even if the lien release was valid, plaintiff was free to credit the joint payee checks to any of Wanke's past-due accounts, whether for materials

supplied to the Stoneridge project or otherwise, and whether supplied before or after the release was given. In fact, plaintiff applied only $4,097.32 of the $32,081.45 paid it by Stoneridge to the Stoneridge project. It is clear that plaintiff could not apply the payments as it did. A materialman may not apply payment however it sees fit when it knows the source and the intended application of the funds paid. In *Empire Building Supply v. EKO Investments,* 40 Or App 739, 744-45, 596 P2d 593 (1979), we stated:

> "* * * [W]hen a materialman knows the source of funds for payments made by a contractor, or that payment is intended to be applied against the cost of materials supplied to a particular project, he must 'give credit where credit is due' in order to protect an owner from having his improvement exposed to a greater liability than was intended by the construction lien statutes. The question here is whether plaintiff had such knowledge."

The fact that the checks were issued directly by Stoneridge payable to both plaintiff and Wanke is compelling evidence that plaintiff knew the source of the funds and that the funds were intended only for Wanke's Stoneridge account. Further, it is implicit in the arrangements worked out by the parties that Stoneridge would terminate Wanke's contract unless Stoneridge was relieved of liability for materials already in the project and for which Wanke had been paid. That was the function of plaintiff's releasing its lien for those materials; without the lien, it had no claim against Stoneridge. For plaintiff to say that, notwithstanding the purpose and effect of the agreed upon arrangements, it was free to apply Stoneridge's funds any way it wished defies common sense as well as the understanding implicit in what the parties did at the time the crisis arose. We conclude that plaintiff knew how the Stoneridge payments were to be credited and was obliged to credit them first to materials supplied for Stoneridge after the release. Because Stoneridge attempted to settle the dispute by permitting the $18,318.08 Stoneridge owed Wanke at the time of the release to be applied to amounts then owed plaintiff for the Stoneridge job[2] and followed up that attempt by its

---

[2] We note that plaintiff might have been able to reach that amount by way of garnishment and that Stoneridge may have taken that factor into account in making its tender.

tender, Stoneridge has not disputed that application of those funds.

The trial court computed the amount due as if plaintiff had properly credited Wanke's account, and there is no error in that computation.

Affirmed.