Argued November 19, 1931; reargued February 16; modified March 29; rehearing denied April 19, 1932

## PHILLIPS v. GRAVES ET AL.

(9 P. (2d) 490)

·  :B. A.· Kliks, of McMinnville (Alvin A. Kurtz, of ·McMinnville, on the brief), for appellant.

·   Arthur H. Lewis, of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for respondents Charles A. Shea and W. A. Lindsay.

C. W. Redding, ·of Portland, for respondent Dorothy L. Kliks and others.

·  ROSSMAN, J.   A review of a few undisputed facts will readily reveal the issues awaiting our attention. One Ernest L. Graves was the owner of a lot in the city of Portland which he was improving with the construction of a dwelling house. May 3, 1926, before the work had been commenced, he borrowed from the defendant, B. A. Kliks, the sum of $3,500, and, in order to secure its repayment, executed upon that day a mortgage upon the aforementioned lot.  It is the house, and not the lot, which the lien claimants seek to affect with their alleged liens (section 51-103, Oregon Code 1930). May 6, 1926, construction of a dwelling house was begun. Prior to that time Graves and one J. F. Shea, a plumbing contractor, agreed that the latter should perform the plumbing work upon this house

for the stipulated sum of $510. December 18, 1926, when the plumbing work was 60 per cent complete, Shea died. Charles A. Shea, his son, was appointed administrator and subsequently completed the contract. After the plumbing had been roughed in, construction work upon the house ceased and was not resumed until some time in 1928. In July of that year, that being 18 months after the death of J. F. Shea, the administrator and Graves agreed that Shea should install in the house a furnace, a heater for the hot-water tank, a composition tile drain board in the kitchen, some tile work in the bathroom, and should also be responsible for connecting the water pipes of the house with the city's pipes in the street. For these additional items the executor made a charge of $318.50. September 22, 1928, after all of the above work had been completed, the administrator filed a lien notice in which he set forth the statement of claimant's demand as follows:

"Mr. Ernest L. Graves, In Account with Charles A. Shea, Administrator of the Estate of J. F. Shea, deceased,

"To labor and material furnished and delivered and used in the construction of said building, as per contract, $828.50."

The account did not segregate the total into items. Charles A. Shea, as administrator, seeks in this suit to foreclose the aforementioned lien. Although he appears in the title of the cause as a defendant, we shall hereafter deem Charles A. Shea, administrator, as a plaintiff or a claimant. The pleadings of the defendant Kliks alleged several defenses against the claim of Shea, but we shall confine our attention to the contention which urges that an administrator cannot file a lien notice for work done by his decedent, and to the

further contention that, since the lien notice lumps in one total the claims for work done by the deceased, as well as for work done by the administrator, it will be impossible to sustain the lien even though we should conclude that the administrator would be entitled to a lien for the work done by himself.

The second of the aforementioned liens is claimed by one W. A. Lindsay, a carpenter, who alleges that he performed work upon the above premises of the reasonable value of $72. Kliks urges that Lindsay has been paid in full for all work performed by him upon the premises, and that his lien notice was not filed within 30 days after completion of the building, unless we should conclude that some minor items done within the 30-day period were not properly classifiable as repairs but, in fact, constituted construction work. These constitute Kliks' principal objections to the Lindsay claim.

Section 51-101, Oregon Code 1930, provides:

"Every mechanic * * * contractor * * * and other persons performing labor upon or furnishing material * * * used in the construction * * * of any building * * * shall have a lien upon the same for the work or labor done * * * or material furnished * * *."

Section 51-105, Oregon Code 1930, provides:

"It shall be the duty of every original contractor within 60 days after the completion of his contract * * * to file with the county clerk * * * a claim containing a true statement of his demand * * * which claim shall be verified by the oath of himself or of some other person having knowledge of the facts."

■ The first question presented by this appeal is whether the administrator can obtain a lien for work performed by the deceased and for which the latter

filed no lien notice. This court has never before been called upon to decide this question. The nearest that any of our previous decisions approach this problem are those which hold that an assignee of a mechanic's account for unpaid wages is unable to obtain a lien. As early as 1870 this court in *Brown v. Harper,* 4 Or. 89, pointed out that the authorities treated the right to assert and perfect a mechanic's lien as a privilege personal to the mechanic and not transferable. After having made this observation the court intimated that an assignee of the account, before a lien notice had been filed, acquired nothing more than the chose in action and was unable to secure the benefit of a lien, but held that one who acquired his rights from another who had perfected his lien by filing the required notice acquired not only the account but the lien also. In *Alderson v. Lee,* 52 Or. 92 (96 P. 234), this court said: "The rule is that the right to perfect a lien, given by statute, is a privilege limited to the claimant, and that any assignment thereof before record carries only the chose in action constituting the basis of the intended lien." In *Loud v. Gold Ray Realty Co.,* 72 Or. 155 (142 P. 785), this court reiterated the same principle and declared: "The right to a lien of this kind is a creature of the statute, and the right to perfect such a lien is limited to the persons who do the work or furnish the material or supplies. * * * The rule is settled in this state that, if a person has a right to perfect a lien of this nature, and he assigns his debt or claim to another, his assignee takes title to the debt, but has no right to perfect the lien." See to like effect: *McKinley v. Tice,* 129 Or. 190 (276 P. 1110). The plaintiffs question the wisdom of these decisions and contend that the assignment of the claim carries with it the security. The authorities are in sharp conflict upon

the question whether the assignment of the claim authorizes the assignee to perfect the lien by filing the required notice. For a collection of decisions see Phillips on Mechanics' Liens (3d Ed.), §§ 54-56, and 40 C. J., Mechanics' Liens, p. 309, § 407. An examination of the authorities discloses that many of those which hold that the assignment of the debt authorizes the assignee to perfect the lien were affected by mechanics' lien statutes which demanded such conclusions. Of the decisions which hold that the assignee of the claim may perfect the lien *Kinney v. Duluth Ore Company,* 58 Minn. 455 (60 N. W. 23, 49 Am. St. Rep. 528) possibly was the least aided by a lien statute. We take from it the following excerpt:

"There is nothing in our statute, as there is in the statutes of some states, which forbids, directly or by implication, the assignment of such claims and demands; and it was held more than twenty-five years ago, in Tuttle v. Howe, 14 Minn. 145, 100 Am. Dec. 205, that a lien claim was capable of assignment, although in that case the required affidavit for a lien had been filed by the original creditor prior to the assignment. In that opinion, attention was called to the General Statutes of 1866, chapter 90, section 14, the then existing lien law, which gave to executors and administrators, as does the laws of 1889, chapter 200, section 17, the same rights as their testator or intestate would be entitled to, if living, and the well-settled general rule, that whatever rights of action or of property survive to an executor or administrator are assignable, was referred to and relied upon. No one would dispute the right of an executor or an administrator to file the lien statement required by the present statute, and if such be the case it logically follows that the assignee of the lien may make and file the lien statement. There is no good reason why the right to the lien should not be assignable before as well as after the statement has been filed, and there is an abundance of reasons why, if

the right be assigned, the assignee should thereafter take all necessary steps required to preserve and collect his claim.''

Of the cases taking the opposite view *Mills v. LaVerne Land Co.*, 97 Cal. 254 (32 P. 169, 33 Am. St. Rep. 168), is a good representative. After the court in that decision had reviewed many of the authorities it expressed itself thus:

''Appellant invokes the rule that the assignment of a debt carries with it the lien by which it is secured. But, in the first place, that rule is not of universal application; it does not apply, for instance, to vendors' liens, or to the many liens which accrue to various kinds of bailees. And in the second place, at the time of the assignment of the debt to plaintiff in the case at bar, there was no lien securing it in existence; the assignors had merely a personal right to create a lien by complying with the statute. But the statute nowhere confers such right upon an assignee. It would be impossible for an assignee to comply with the statute, for the code (sec. 1187) provides that the contractor, or other persons mentioned in section 1183, must himself file a claim for record, stating the character of the labor or materials which he himself furnished for the building. And this shows clearly that the legislature was providing a lien only for a contractor, laborer, or materialman. It is urged that it would be a construction beneficial to the laborer to hold that he could sell or raise money upon his mere personal, inchoate right to procure a lien; but the legislature may not have thought that it would be advantageous to a laborer (for whose benefit the law was originally passed) to allow him the privilege of frittering away his wages at ruinous discount to money lenders and speculators. At all events, a court can neither make nor amend a statute. The law must be enforced as we find it enacted.''

This state possesses no statute similar to that mentioned in *Kinney. v. Duluth Ore Company*, supra,

granting to executors and administrators the same rights which their decedents possessed. It must be clear that such a statute could not be intended to do more than declare a general principle of law incapable of universal application. For instance, if the deceased at the time of his death had a promise of marriage from a woman, clearly the administrator could not present himself as the groom and demand that the ceremony proceed; nor could he insist upon performing any other outstanding contract in which the services to be performed were of a personal nature. Hence, such a principle of law, whether set forth in a statute or recognized in the decisions of the courts, would of necessity be general in nature and of but slight assistance because the real question awaiting answer is whether the privilege of a lien is personal to the claimant. We remain satisfied with the conclusions which this court has announced in its previous decisions, holding that the privilege of a lien is a personal one which an assignee of the chose in action can not perfect. If the reason for these holdings is the circumstance that an assignee is not named in the statute as one to whom a lien is available, the same reason demands a conclusion that, since an administrator is likewise not named in the statute, he also is unable to procure a lien when his decedent neglected to do so. Whether the effort is made by the administrator or by the assignee, the rights of each are derivative and are not for the personal benefit of the mechanic or materialman.

■ No amount of legal reasoning can grant an administrator a lien if the statute allows none, for liens are purely statutory. As we have seen, the word administrator does not appear in the statute. The latter affords no justification for granting an administrator a lien,

unless we believe that a gap exists in the statute and that some rule of statutory construction justifies us in inserting in the gap the word administrator. Before we declare that a gap exists we ought first to find one. A reading of the statute readily induces the observation that it was prepared with meticulous care after much consideration of the problem of who should have the benefit of liens. The authors were evidently insistent upon fully cataloging all those whom they desired should have the right to procure liens. Our lien statutes can not be regarded as efforts to enunciate general principles only in the expectation that judicial construction will supply the needed details. Since the statute itself enumerates with painstaking care its beneficiaries, we find nothing which suggests a gap and grants us leave to fill it with the word administrator.

■ Nor are we aware of any rule of construction that will assist the claimant. It may be argued that the rule of equitable construction (Lewis' Sutherland, Statutory Construction (2d Ed.), § 587) is available, and that it serves as justification for including administrators within the category of those who may obtain a lien. It is by no means clear, however, that the same reasons which prompted the legislature to make available to a mechanic and a materialman a lien, as security for the payment of sums due them, would have persuaded the lawmaking body that the beneficiaries of deceased contractors, mechanics and materialmen, whoever they might be, should likewise be favored. It is altogether possible that the deceased would have preferred to waive his right to a lien.

Section 9-214, Oregon Code 1930, provides:

"In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare

what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted  *  *  *."

In support of his alleged right to obtain a lien, the plaintiff Shea has called to our attention *Fenton v. Fenton Building Co.*, 90 Conn. 7 (96 Atl. 145), and *Iron Company v. Heating & Ventilating Company*, 5 Ohio Dec. 292. After claiming that in each of these cases the court recognized a right in a receiver to obtain a mechanics' lien, Shea urges that, therefore, a lien is available to an administrator also. In the first of these two cases no lien in behalf of a receiver was involved. The statement by the court concerning such a possible lien was obiter dictum only. Its observation was confined to the following words:

"We know of no reason why the receiver might not file a lien to secure himself for materials and labor furnished in carrying out the Fenton Company's contract."

It is not clear whether the court had reference to work done by the receiver or to the account owing at the moment when the receivership went into effect. The second of the two above cited cases involved no issue whether the state statutes authorized a receiver to file a lien. Apparently such a right was assumed by all. However, the court held that the alleged lien was void for other reasons. The defendant, in support of his contention that an administrator cannot file a lien notice for work done by his decedent, and thereby obtain a lien, has called to our attention *Richardson v. O'Connell*, 88 Mo. App. 12, and *Miller v. Hoffman*, 26 Mo. App. 199. It is reasonably possible to so construe the holdings of the court in these two cases as to lend support to the defendant's contention.

*Telfer v. Kierstead,* 9 Abb. Prac. (N. Y.) 418 which is cited by 1 C. J., p. 207, § 401, as the sole authority for the statement that ''as a general rule, the right to file a mechanics' lien and to proceed for its foreclosure is not defeated by the death of a party'' does not involve a set of facts similar to those before us, nor does it declare any principle of law helpful in the present instance. In that case the lien claimant was a subcontractor who apparently had performed his contract. He then sought the lien. The individual who died was not this subcontractor, but was the general contractor. No lien was sought by the estate of the latter. It is evident that the question presented by Shea's administrator was not before that court, nor did it intimate what disposition it would have made of this question had it been presented.

■ In view of the fact that some of the authorities regard a mechanics' lien as ''created as soon as the labor was performed or furnished'' (*Gloucester Water Supply Co. v. City of Gloucester,* 179 Mass. 365 (60 N. E. 977)) it may possibly be argued that the lien was in existence before Shea died and that, hence, it descended to his estate upon his death. It may further be suggested that until the lien notice was filed the lien was a secret one (*Charleston Lumber & Manufacturing Co. v. Brockmyer,* 18 W. Va. 586) and that the only effect to be ascribed to the filing of the lien notice was the same as attaches to the recording of a mortgage. This court, however, has thus defined the nature of the claimant's rights in the premises prior to the filing of the lien notice:

''A laborer's or a materialman's lien is in the nature of a shadow which ultimately may, but does not cloud the title of, or attach to the real property benefited by an improvement, until the prescribed notice

has been filed in the proper office within the time allowed, when the charge, which the law imposes as security, relates back to the beginning of the work. * * * Under enactments like those at present in force in Oregon, it is believed, however, that the right to a statutory lien is only inchoate, and that the lien does not become vested until the notice or claim has been filed, as required by law." Auld v. Starbard, 89 Or. 284 (173 P. 664).

In other words, those mentioned in the statute obtain a lien when the two following circumstances have taken place: (1) they have performed work or have supplied materials; and (2) have filed the required lien notice. Until these two developments have occurred the lien defined by the statute has not been created. This being true, no lien was in existence at the time of J. F. Shea's death, and, hence, none descended to his estate.

■■ It is well established in this state that the rules of strict construction are applicable to our mechanics' lien statutes. This is especially true in the determination of those who are the beneficiaries of the statute. See *McKinley v. Tice,* 129 Or. 190 (276 P. 1110), and see generally Phillips on Mechanics' Liens (3d Ed.), §§ 16-20, and 40 C. J., Mechanics' Liens, p. 50, § 10. Likewise, since it is well established that liens of this character are of purely statutory creation, anyone who claims such a lien must prove that he is within the group mentioned in the statute. We quote from *Boise-Payette L. Co. v. Dominican Sisters,* 102 Or. 314 (202 P. 554):

"The right to a lien being purely of statutory creation, whatever the statute makes necessary to its existence must be done, and one claiming the benefit of that statute must bring himself clearly within its terms. * * * We quote with approval from the case of Pilz v. Killingsworth et al., 20 Or. 432, 435 (26 P. 305), wherein this court said: 'The right to a lien is in

derogation of the common law, and can only be established by a clear compliance with the requirements of the statute. The right is conferred by statute, and the party claiming such lien must show a substantial compliance with the statute'.''

Summarizing the foregoing, it will be observed that (1) the statute does not mention an administrator, executor, nor the estate of a deceased as possible lien claimants; (2) this court has repeatedly held that an assignee of a mechanic's unpaid account cannot file a lien notice and thus obtain a lien because (a) the lien is personal to those named in the statute, and (b) because an assignee is not named in the lien act; (3) the rules of strict construction are applicable to those portions of the act with which we are concerned; (4) no lien was in existence at the time of J. F. Shea's death; (5) only the chose in action came into the possession of the administrator at the time of decedent's death; and (6) even if the rule of equitable construction is available it is by no means clear that the estate of a deceased should be included within the catalog of those who may file a lien claim. These circumstances and principles of law persuade us that the alleged lien of the administrator for work done by J. F. Shea was invalid.

■■ We have not failed to consider the argument advanced by the lien claimant that upon the death of J. F. Shea the administrator was bound to complete the performance of his contract and is, therefore, entitled to a lien. This argument fails to persuade us for two reasons: (a) At the time of J. F. Shea's death Graves had already breached this contract by failing to proceed with the construction of the house, and also apparently by failing to pay Shea the sums earned by him up to that time. Eighteen months elapsed after

Shea's death before Graves resumed construction work. The administrator was not required to proceed with a defaulted contract. Moreover, a lien is sought for several substantial items which were not part of J. F. Shea's contract. (b) Even if the administrator was required to proceed, that circumstance alone would not entitle him to a lien, for there are numerous personal representatives who, following the death of their principal, are compelled to complete performance of various contracts but are unable to obtain liens because the statute allows none.

■■■ The administrator argues that the lien should be sustained for the work performed by himself after the death of J. F. Shea. It will be observed from the account which appears in the lien notice that the items are not segregated but are lumped in one gross sum. It is impossible to determine from an inspection of the account what charge was made for the work performed by the administrator as distinguished from that which J. F. Shea performed. In *Williams v. Toledo Coal Co.*, 25 Or. 426 (36 P. 159, 42 Am. St. Rep. 799), this court said: "An account containing a lumping charge, in which is mingled an item for which no lien is given, will not support a lien; and the defect cannot be cured by oral evidence, by means of which the items for which a lien is given may be separated from those for which a lien is not given." This rule has been applied many times. For a collection of instances see *Christman v. Salway*, 103 Or. 666 (205 P. 541), and see also *McKinley v. Tice*, supra, and *James A. C. Tait & Co. v. Stryker*, 117 Or. 338 (243 P. 104). Having taken the view that the administrator cannot claim a lien for the work done by J. F. Shea, it necessarily follows that the account contains a nonlienable item and, since all sums claimed are mingled in a single charge, the alleged lien

is void. In *Miller v. Hoffman,* supra, the same conclusion was reached upon facts very similar to those before us.

The contentions of the defendant concerning the alleged lien of W. A. Lindsay present issues of fact only; that is, whether he had received full payment and whether the last work performed upon the house should be deemed construction work or items of repair after completion. The law applicable to such issues is well settled and has been many times applied in other decisions of this court. We find no occasion to state once more these commonplace principles of law, nor to set forth herein our review of the testimony. The matter received the careful attention of the circuit judge whose findings are in favor of the lien. Similar consideration bestowed upon the issues by this court has brought us to the same conclusion as the circuit judge.

It follows from the above that the decree of the circuit court will be reversed as to the Shea lien but affirmed as to the Lindsay lien. Lindsay may recover his costs and disbursements, but these items will be allowed to neither party for the Shea claim.

BROWN, BELT, CAMPBELL and KELLY, JJ., concur.

———

RAND, J., dissenting. This is an appeal from a decree foreclosing two mechanics' liens. One of the liens was claimed and filed by plaintiff as administrator of the estate of his father, J. F. Shea, deceased. It includes a claim for labor and material furnished by the intestate and a claim for labor and material furnished by plaintiff as administrator in completing, after intestate's death, the work contracted to be performed by decedent, and also a claim for labor and

material furnished by plaintiff as administrator at the request of the owner in furnishing certain equipment not included in the original contract.

Defendants attack the validity of this lien upon the ground that an administrator is not entitled to file a lien for labor or material furnished by his intestate before his death and that, since the notice of the lien filed by the administrator is for a lump sum and contains no statement by which the amount claimed for labor and material furnished by the intestate can be segregated, the whole lien is invalid because containing in a lump sum lienable and non-lienable items, the amounts of which cannot be determined without the aid of extrinsic proof.

There is no contention that the lien is invalid upon any other ground, nor is it contended that, if the intestate had lived and had himself performed the acts subsequently done by his administrator, he could not have claimed and enforced a lien for the entire amount claimed. The whole controversy, therefore, resolves itself into the question: Can an administrator, under our statute and within the time allowed by law after complying with all other requirements of the statute, file and enforce a lien for labor and material furnished by his intestate in a case where his intestate could have done so had he lived? This question is res nova in this state and its answer must be determined by the provisions of our statute.

The right to a lien is given by section 51-101, Oregon Code 1930, to every person performing labor or furnishing material to be used in the construction of a building, who substantially complies with all the requirements of the statute. The only provisions in respect to the question of by whom the lien shall be filed is contained in section 51-105. That section provides

that: "It shall be the duty of every original contractor * * * or other person * * * to file with the county clerk * * * a claim containing a true statement of his demand, after deducting all just credits and offsets, with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged with said lien, sufficient for identification, which claim shall be verified by the oath of himself or of some other person having knowledge of the facts."

It has been uniformly held by this court that under this statute none of the persons upon whom the right to a lien is conferred can assign his account before filing his claim of lien so as to vest in his assignee the right to file and enforce a lien therefor, and that such an assignment, although vesting in the assignee the right to enforce the claim, does not confer upon him the right to perfect the lien by filing a claim therefor. The reason for so holding is that the right to a lien, under our statute, is a personal right or privilege which may be waived by the party entitled thereto and the right being a mere personal right or privilege cannot be assigned but must be exercised by the individual entitled thereto. It is contended that that principle is applicable to an executor or administrator of a deceased person who, had he lived, could have enforced the right to perfect his lien by himself filing a claim therefor.

The powers and duties of an administrator are fixed by law and they devolve upon him by operation of law and not by way of assignment. In exercising such powers and duties, the administrator is not acting for himself but in a representative capacity. As a general rule, an assignor is the owner of the thing

assigned and, in respect thereto, acts for himself as owner and wholly free from the duties of a person acting in a representative capacity. The situations, therefore, are not analogous and it would seem that the reason for the enforcement of the rule in the one case does not exist in the other. If this deduction is true, the rule is not applicable to an administrator or other person acting in a representative capacity, nor is it even persuasive under the situation disclosed here. For the purpose of settling the business affairs and distributing the estate of the intestate, the administrator stands in the place and is regarded as the representative of his intestate. In addition to standing as the personal representative of the deceased, he occupies the position of trustee for the persons beneficially interested in the estate. The powers and duties of an administrator arise by operation of law and under the law the administrator not only represents the intestate himself but succeeds to his rights and, to the extent of the assets, to his liabilities: 11 R. C. L., sections 6 and 8. It is the duty of an administrator in all cases to collect all outstanding accounts of his decedent and to administer the estate so that the assets can be distributed to the persons entitled thereto. From the nature of these powers and duties, it would seem to follow that, if plaintiff's intestate had lived and would have been entitled to obtain a lien for the services he performed, his administrator would be entitled to the same right.

The evidence shows that plaintiff's intestate at and prior to his death was a contractor actively engaged in doing contract work and at the time of his death had numerous uncompleted contracts. That in performing his contracts, he did so not by his own labor but wholly by the labor of others who were employed by

him for that purpose. In the instant case he had contracted with the owner of the property to furnish and install certain plumbing equipment in a dwelling house which the owner was constructing and that, for the doing of this work, he was to be paid a stipulated sum, the contract being an entire contract and the price to be paid therefor one lump sum. At the time of his death about sixty per cent of the work contracted for had been completed.

Ordinarily building contracts are not entered into because of the personal services or skill of the contractor and particularly so where the services are to be performed by others and where, as here, it was not contemplated that the contractor should himself perform them. It is only when a building contract is entered into because of the personal services or skill of the contractor that the contract terminates upon the death or disability of the person contracting to perform such services. Hence, the rule is that it is the duty of an administrator to perform the contract of his intestate unless the acts to be performed are of such a personal nature that they would be discharged by the death or disability of the person who has been employed to perform them: *Re Burke,* 198 Cal. 163 (244 P. 340, 44 A. L. R. 1341), and authorities cited; also see note in 44 A. L. R. 1345, et seq.

The contract under which the services were performed by plaintiff's intestate, and by the administrator following decedent's death, for which this lien is claimed was not for the personal services of the contractor and, therefore, it survived the death of plaintiff's intestate and, since it did not terminate upon the death of plaintiff's intestate, the administrator was compelled by law either to fulfill the contract or to be answerable for damages for his failure to

perform the contract. Since it was the duty of the administrator to collect the amount due decedent for his part performance of the contract under which this lien is claimed and of plaintiff, as administrator, to complete the contract and to enforce the collection of the combined amount due, it is only reasonable to hold that the administrator may exercise every remedy which his intestate could have exercised had he lived and performed the entire services himself. An examination of the statute shows that it neither expressly nor by necessary implication forbids an administrator from filing a lien for services performed in the construction of a building by his intestate in a case where the intestate might have done so had he lived and, there being nothing in the statute from which it could be reasonably inferred that the lawmakers intended that the statute should be given that effect, the statute ought not to be so construed.

The only case cited bearing upon this particular question is *Telfer v. Kierstead,* 9 Abb. Prac. (N. Y.) 418, where it was held that the right to file a lien under the mechanics' lien law and to foreclose the lien is not lost by reason of the death of the contractor. Based upon that decision, it is said in section 401, 1 C. J., p. 207, that: ''As a general rule the right to file a mechanic's lien and to proceed for its foreclosure is not defeated by the death of a party.''

For these reasons we think the decree of the lower court enforcing this lien should be affirmed and, finding no error in respect to the other lien, the whole decree should be affirmed.

BEAN, C. J., concurs.