In re NORTH SIDE LUMBER COMPA-
NY, a partnership of Anna M. Bevens;
The Estate of Dorval Bevens, deceased,
Norman Jean Vincent and H. David
Smith, Trustees of the Norma Jean Vin-
cent Trust; and H. David Smith, Trust-
ee of the Ryan D. Vincent Trust, the
Pamela Jean Vincent Trust, and the
Timothy L. Vincent Trust, Debtor.

NORTH SIDE LUMBER
COMPANY, Plaintiff,

v.

INDUSTRIAL INDEMNITY COMPANY,
a corporation, Barclays Ameri-
can/Business Credit, Inc., Seattle-First
National Bank, United Pacific Re-
liance, Nelli Scott, Leasco of Wash-
ington, Inc., Hyster Credit Corporation,
G. Moser, Starker Forests, Inc., Gass-
ner Logging, D.T.L. Logging Co., Ram-
co Logging, R.L. Rose Logging, Inc., R
& T Logging, J T W, Inc., Richard Van
Damme, Gerald Smallwood Logging,
Inc., A.C. Brown & Son Logging, Dale
Crocker, Shot Pouch Logging, Inc.,
William A. Smith, Raymond D. Friend,
Ferguson Logging Co., Ted Stephens,
John Thompson, Inc., E.G. Construc-
tion, Inc., Atchley Bros., W E H Corp.,
L & M Welding, Inc., Devco Engineer-
ing, Inc., Morse Brothers, Inc., North
Star Surveying, Inc., Ralph Cole, dba R
& J's Radiator Service, George Van
Dyke, and Ronald G. Oleman, Defend-
ants.

Bankruptcy No. 385–00316.
Adv. No. 85–0521.

United States Bankruptcy Court,
D. Oregon.

April 24, 1986.

Lucy E. Kivel, Portland, Or., for North
Side Lumber Co.

Elizabeth H. Yeats, Portland, Or., for defendant United Pacific Reliance Co.

M. Christie Helmer, Portland, Or., for defendant Seattle First Nat. Bank and Leaseco. of Washington, Inc.

Margaret Leek Leiberan, Portland, Or., for defendant Barclays American/Business Credit, Inc.

Gregory J. Christensen, Corvallis, Or., for defendant Nellie Scott.

James P. Laurick, for defendant Indus. Indemnity Co.

ELIZABETH L. PERRIS, Bankruptcy Judge.

This is an adversary proceeding brought by the Debtor-in-Possession, North Side Lumber Co., to determine the validity of the lien claimed by Industrial Indemnity Co. under ORS 656.564.[1] Industrial Indemnity provided North Side workers' compensation insurance from July 1983 until cancellation in February, 1985. North Side's secured creditors have joined in its attempt to defeat the Industrial Indemnity lien because the lien, if valid, would be superior to their liens.

FACTUAL BACKGROUND

North Side and Industrial Indemnity entered into Workers' Compensation Policy No. 852–5234 for the policy year July 1, 1983 through June 30, 1984 and Policy No. 858–9925 for the policy year July 1, 1984 through June 30, 1985. Both policies covered the workers at all three sawmill sites owned by North Side.

The policies have two central characteristics: a retro-spective premium endorsement and a deferred payment plan. Retro-spective premium endorsements, which are common in the workers' compensation insurance industry, require that the insured pay a premium based on an estimated standard premium. The first retro-adjustment takes place between six and nine months after the close of the policy term. At that point the insurer conducts an audit and calculates the actual loss experience of the insured. The initial premium is then adjusted upward or downward according to the amount of loss suffered. Further adjustments are made during a period lasting as long as five years after the policy term expires. Retro-spective premiums operate as an incentive for employers to provide safe work places by allowing them to reap the benefit of a low injury rate by lowering their insurance rates.

Deferred premiums allow the insured to pay only a fraction of its estimated premium during the policy period. The remainder is due at a specified time after the end of the policy period. The employer who has a low accident year can hope to offset the refund from his retro-spective adjustment with the amount owing on the deferred premium. If the employer has a high accident year he may have no refund coming after the retro-adjustment, and will face a large lump sum payment when the deferred amount comes due.

Prior to entering into a contract which includes deferred premiums, the insurer will usually require that a financial statement be submitted and approved. The decision of whether to defer a certain employer's premiums is strictly a business decision on the part of the insurer. In this case during the 1983–84 policy year, Industrial Indemnity deferred 70% of the estimated monthly premium. During 1984–85, 40% was deferred. Both policies called for payment of the deferred premium nine months after the close of the policy period.

The preliminary audit conducted by Industrial Indemnity in August, 1984 showed that North Side's losses were unexpectedly high in 1983–84. In September 1984, North Side agreed to make monthly payments of $30,783 in order to decrease the amount owed on the deferred premium. North

---

1. The Debtor's complaint raises three issues: (1) the validity and extent of Industrial Indemnity's lien; (2) the validity of all other liens; (3) the priority of all other liens. This portion of the adversary proceeding only decides the issues concerning the validity of Industrial Indemnity's lien. The other issues will be tried at a later date. This adversary proceeding is a core proceeding as described in 28 U.S.C. § 157(b)(2)(K).

Side failed to pay the premium billed on November 28, 1984. On January 28, 1985, Industrial Indemnity sent written demand for payment to North Side. The demand was made by certified mail, return receipt requested. The demand letter was received by plaintiff on January 31, 1985, the same day it filed bankruptcy. In its formal notice of default, Industrial Indemnity, apparently in accordance with its rights under the contract, chose to accelerate the balance due on the deferred premiums for both policy years. The demand was for $586,584.47. This figure reflected Industrial Indemnity's preliminary estimate of North Side's total liability for both policy periods, including full payment of deferred premiums and retro-adjustments.

In February, 1985, Industrial Indemnity caused a field audit of North Side's records to take place. This audit revealed that the amount owed by North Side was actually much less than Industrial Indemnity's first estimate. The audit determined that $142,862.47 was owed under the 1983–84 policy and $184,524.75 was owed for the 1984–85 policy year. The total amount due is $327,387.23.

On April 3, 1985, Industrial Indemnity moved for relief from the automatic stay in order to file its lien. Relief was granted on April 23, 1985. The order granting the motion states, "nothing in this order shall be construed to enhance Industrial Indemnity Company's rights under Bankruptcy Code §§ 362(b) and 546(b), or to establish that Industrial Indemnity Company has any rights under ORS 656.564, and that all issues with respect to the amount, validity and priority of the lien are reserved for determination at a future date." On October 23, 1985, Industrial Indemnity was granted relief from stay for the limited purpose of filing a complaint to foreclose its lien within the statutorily mandated time.

## STATUTORY BACKGROUND

Chapter 656 of the Oregon Revised Statutes contains two provisions for the enforcement of workers' compensation insur-

ance premium payment. ORS 656.564 provides a lien for "insurers". ORS 656.566 provides a lien in favor of the State Accident Insurance Corporation (SAIF). Since "insurer" is defined to mean SAIF or a private insurance company authorized to transact workers' compensation insurance in Oregon, ORS 656.005(15), it appears that SAIF has two liens available to enforce premium payment while private insurers only have one.

ORS 656.564(1) provides a lien for amounts due from an employer on the real property and structures upon which the workers, who are covered by the policy, work. The lien is for a sum equal to the "amount at any time due from such employer ... on account of labor performed" on that property.

ORS 656.564(2) provides a lien on all "lumber, sawlogs, spars, piles, ties or other manufactured articles of whatsoever kind or nature, and upon all machinery, tools and equipment of the employer used in connection with the employment on which contribution, premiums or assessments are due." The lien is for a "sum equal to the amount at any time due" from the employer on account of workers covered by the policy.

ORS 656.564(3) states that, "in order to avail itself of the lien created by this section, the insurer shall, within 60 days after the employer is in default, as provided in ORS 656.560, file with the county clerk of the county within which such property is then situated a statement in writing describing the property upon which a lien is claimed and stating the amount of the lien claimed by the insurer." ORS 656.560 defines default as failure of an employer to make payment within 30 days after written demand is made for payment. The demand must be sent by registered or certified mail.

Suit to foreclose the lien must be commenced within six months of the filing of the statement. ORS 656.564(4). The lien created by ORS 656.564 is given priority over "all other liens and encumbrances, except labor liens and liens for taxes and

other amounts due the state of Oregon." ORS 656.564(5).

The lien available to SAIF under ORS 656.566 allows a lien on "all property, whether real or personal, belonging to such employer." It attaches upon the filing of a notice of a claim of lien with the county clerk of the county in which the property is located. ORS 656.566(2). This lien is not given super-priority but is only prior to liens and encumbrances recorded subsequently to the filing of the claim of notice, except taxes and labor liens. ORS 656.566(5).

The super-priority lien which is today ORS 656.564 was first granted to the predecessor of SAIF in 1913. 1913 Or. Laws c. 112 § 24 (1913). In 1935, the lien now at 656.566 was created. 1935 Or.Laws c. 392 § 1. In 1979, ORS 656.564 was amended to allow private insurers to avail themselves of the super-priority lien. 1979 Or.Laws c. 815 § 6.

In 1971 the Oregon Court of Appeals in *State Compensation Department v. Beaver Creek Lumber Co.*, 5 Or.App. 1, 480 P.2d 441 (1971), described ORS 656.564 as "ambiguous" and stated that it was the court's duty, when faced with such a statute, "to construe it so that it can be applied in a reasonable manner." 480 P.2d at 443. While the legislature amended the statute to address the particular problem cited by the Court of Appeals in *Beaver Creek*,[2] the statute today is as ambiguous as it was in 1971. To compound the problem, many of the issues raised in this proceeding have never been addressed by an Oregon appellate court. In such instance, federal courts must attempt to "utilize the same methodology that would be employed by the state court itself if confronted with the ques-

tion." *In re Mendenhall,* 4 B.R. 127 (Bankr.D.Or.1980).

## ISSUES

The pleadings and memoranda submitted by the debtor and the secured creditors contain a multifarious attack on the validity of the lien. Their arguments raise four main issues:[3]

1. Is the lien asserted by Industrial Indemnity invalid as a post-petition lien?

2. Does the lien comply with the requirements of ORS 656.564 and generally applicable lien law?

3. Is the priority given to workers' compensation insurers under ORS 656.564 constitutional?

4. Is the prevailing party entitled to an award of attorney fees?

This opinion deals only with issues one and four because this court's resolution of the first issue makes it unnecessary and inappropriate to rule on the second and third issues.

## DISCUSSION

**A.** *The lien is invalid as a post-petition lien.*

On January 31, 1985, North Side Lumber filed bankruptcy. Prior to that event the validity of Industrial Indemnity's lien, and all other claims grounded in state law, was judged solely in accordance with state law. When the bankruptcy petition was filed, federal law was brought into play. No longer is the validity of the lien solely a matter of state law. This court's first task is to determine whether the lien is recognized as a valid lien under the Bankruptcy Code. If it is, then its validity under state law becomes an issue. In ef-

---

**2.** Prior to 1971 the statute did not require that the demand be made by certified mail. In *Beaver Creek* the court held that the legislature must have intended that the usual billing sent to an employer upon non-payment by the due date, act as the demand. The lien statement then must be filed within sixty days of that billing demand. Later in 1971 the statute was amended to specify that the demand be by certified mail. This reflected the legislature's intent that the ordinary billing of an insurer not be con-

sidered a demand. (Hearing on Senate Bill 187, Senate Labor and Industries Committee, Feb. 22, 1971).

**3.** For reasons unknown to this court, the issue of whether this lien is a statutory lien that can be avoided by the Debtor-in-Possession under § 545(2) of the Bankruptcy Code, was not raised in this proceeding.

fect, the intervention of bankruptcy necessitates a two tier inquiry into the validity of claims based on state law.

■ Section 362(a)(4) [4] of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." Section 362(b)(3) creates an exception to the automatic stay. It states that the filing of a bankruptcy petition does not operate as a stay, "of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b)." Section 546(b) in turn states that, "the rights and powers of a trustee ... are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." Thus, the Bankruptcy Code allows a lien to be perfected post-petition, if state law provides that upon perfection the lien is superior to other liens or encumbrances having priority in time.

■ Section 362(a)(4) stays acts to "create, perfect or enforce" a lien. In contrast, subsection (b)(3) only provides an exception for acts "to perfect" liens. It is through a comparison of these two subsections that the court finds that in order for acts to perfect a lien to be excepted from the automatic stay, a creditor's underlying interest must be created prior to the petition. "While there should be no doubt that § 362(b)(3) excepts the perfection of certain liens, it is manifestly as clear that creation, as opposed to perfection, is not excepted." *In re New England Carpet, Inc.,* 26 B.R. 934, 939 (B.R.D.Vt.1983). Therefore, in order for Industrial Indemnity's lien to be valid under Bankruptcy law, it must show that the lien was created prior to the filing of its statement, which merely acted to perfect the lien. The Bankruptcy Code

contains no provision governing the creation of liens; we must look to state law to determine when this lien was created.

The lien asserted by Industrial Indemnity is a statutory lien with no basis in common law. In construing such liens, the Oregon Supreme Court first looks to the words of the statute to provide its meaning. *McGregor Co. v. Heritage,* 291 Or. 420, 631 P.2d 1355, 1360–62 (1981). Oregon courts will look outside the statute only if the answer cannot be found in the statute itself. *Id.* "However, the Oregon statutes creating statutory liens do not purport to govern all the incidents of the liens. * * * In the absence of an applicable statute, the rules of equity govern the incidents of statutory liens." 631 P.2d at 1363 (dissenting opinion of Denecke, C.J.). Thus, this court must first look to the words of the statute in order to determine when it was created. If no answer is found in the statute then resort to equitable principles is warranted.

ORS 656.564(1) states, "a lien hereby is created in favor of the insurer upon all real property within this state ... upon which labor is performed by the workers of any employer ... in a sum equal to the amount at any time due from such employer to the insurer ...." Subsection two provides that "the insurer shall also have a lien on all lumber, saw logs ... used in connection with the employment on which ... premiums or assessments are due ...." Although it could be argued that this language provides that the lien is created whenever premiums are due, the Oregon Supreme Court has interpreted similar language [5] in the mechanics' lien statute to mean that a mechanic's lien is not created until it is actually filed. *Phillips v. Graves,* 139 Or. 336, 9 P.2d 490 (1932). In *Phillips,* the Court was faced with the issue of the time of the creation of the lien. The Court held:

---

**4.** 11 U.S.C. § 362(a)(4). In this opinion all statutory references and references to "The Code", are to the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.;* unless otherwise designated.

**5.** O.C.A. § 51–101 (1930) contained the following language: "Every mechanic ... performing labor or furnishing materials ... *shall have a lien* upon the [property] for the work or labor done ...." (emphasis added).

those mentioned in the statute obtain a lien when the two following circumstances have taken place: (1) they have performed work or have supplied materials; and (2) have filed the required lien notice. Until these two developments have occurred, the lien defined by the statute has not been created. 9 P.2d at 494.

Oregon is part of a small minority of states adhering to the theory that a mechanic's lien is not created until it is filed. 53 Am.Jur.2d *Mechanics' Lien* § 247. The majority of courts, faced with interpreting language similar to that found in the Oregon mechanics' lien statutes, have held that the lien is created by the doing of the work or of the furnishing of materials. The lien then lapses at the expiration of a specific time unless the person having the lien files the required statement. *Id.*

If the *Phillips v. Graves* theory of lien creation is applied to Industrial Indemnity's lien, the lien would not exist prepetition, but would only come into existence post-petition when filed. Section 362(a)(4) would bar the creation of the lien post-petition. This court must determine whether the Oregon Supreme Court would apply the rule established in *Phillips v. Graves* for mechanics' liens, to the lien in question. I find that it would. My finding is based on three grounds. First, the similarity of the language used in both statutes. *See* discussion *supra.* The court finds it significant that the Oregon courts often draw on the relatively large body of case law construing mechanics' liens when dealing with other statutory liens. *See McGregor v. Heritage,* 631 P.2d at 1357 (agricultural service lien ORS 87.242); *Lambert v. Stupek,* 237 Or. 498, 392 P.2d 255 (1964) (nurserymen's lien ORS 87.375); *State Compensation Dept. v. Beaver Creek Lumber Co.,* 480 P.2d at 443 (workers' compensation insurers' lien ORS 656.564).

Secondly, prior to 1933 the statute contained the following provision: "the lien hereby created shall attach from the date of the commencement of such labor upon such property...." This language was de-

leted in 1933. *Phillips v. Graves* was decided in 1932. While there is no legislative history to enlighten this court as to the legislature's intent in deleting this phrase, courts must assume that the legislature is aware of the manner in which the courts of that state construe the law. *State v. Clevenger,* 297 Or. 234, 683 P.2d 1360, 1366 (1984). The timing of the deletion can be interpreted as a legislative decision to extend the *Graves* theory of lien creation to the statutory lien involved in this case.

Finally, the priority conferred upon a lien reflects the weight the legislature gives to the policy it embodies. In providing a lien with super-priority status the legislature manifested its deep concern for the stability of the workers' compensation insurance system. But, as strong as the policy behind the lien is, the insurer's lien is not deemed to be prior to labor liens. Labor liens arise under the mechanics' lien statute construed in *Phillips.* They are not created until the notice of lien is filed. Thus, this court cannot find a policy reason why a workers compensation insurer's lien should be deemed to be created at a time prior to when a labor lien is deemed to be created.

Industrial Indemnity cites several cases in support of its position that its post-petition lien is allowed under § 362(b)(3). However, none of these cases support Industrial Indemnity's position, as they fail to address the issue of the time of the creation of the lien. Even if they did, they would carry little weight in this case because the creation and perfection of state liens is a matter of state law, and thus the law varies greatly from state to state. Furthermore, several of the cases cited by Industrial Indemnity were brought under the Bankruptcy Act which was repealed in 1979. The scope of the bankruptcy stay under the Code is considerably broader than under the Act. 2 *Collier on Bankruptcy* Para. 362.01 (15th Ed.).

It is important to note that the doctrine of "relation back"[6] has no bearing on the

---

**6.** "The doctrine of 'relation back' is simply a    fiction of the law by which an act done or a

outcome of this proceeding. It has long been the rule in Oregon that once a mechanic's lien is filed, its effective date is deemed to relate back to the time when the work was commenced or the materials were furnished. *Johnson v. Tucker*, 85 Or. 646, 167 P. 787, 788 (1917); *Auld v. Starbard*, 89 Or. 284, 173 P. 664, 665 (1918). But the "relation back" is triggered by the filing of the claim which creates the lien. *See* discussion *supra*. That filing is precisely the act which is barred by the automatic stay. In essence, the lien is created and simultanously related back at the time of filing. Since the intervention of the bankruptcy petition cuts off the potential lien holder's right to create a lien, it also prevents the doctrine of relation back from coming into play.

**B.** *The prevailing party is not entitled to attorney fees in this proceeding.*

■ The debtor and secured creditors seek an award of attorney fees in this action. Industrial Indemnity resists their claim. Both parties base their arguments on ORS 656.564(4) which states that a workers' compensation insurer may foreclose its lien "in a manner provided by law for the foreclosure of other liens on real or personal property." The debtor argues that prevailing parties' attorney fees are recoverable in actions to foreclose other liens on real or personal property, ORS 87.336 and ORS 87.386. Since the reference in the statute to the other foreclosure statutes results in the incorporation of that statute, then the right to attorney fees is also incorporated.

Industrial Indemnity responds by arguing that the debtor is ignoring the words "in the manner" of suits to foreclose other liens. It argues that the reference to other foreclosure statutes is solely to the procedure contained in those statutes, not to the substantive rights.

The court finds that there is no right to attorney fees in this case for two reasons.

First, the court finds that this action is essentially one brought under the Bankruptcy Code to determine the validity of this lien under federal law. If it was not for the intervention of bankruptcy, it would appear that this lien would be enforceable under state law. Since the Bankruptcy Code does not provide for attorney fees in this situation, such an award is not warranted.

Secondly, state law does not provide for attorney fees in foreclosure actions under ORS 656.564. Prior to 1933 the statute contained a provision which allowed prevailing party attorney fees. O.C.A. 49–1830 (1930). This was deleted in 1933; but the provision that the lien be foreclosed in the "manner provided by law for the foreclosure of other liens on real or personal property" present in the 1930 statute, was retained. Clearly, if the debtor's interpretation of the words "in the manner" were correct, there was never a need for specific reference to attorney fees in the statute. The court finds that the deletion of the provision for attorney fees manifests an intent to deny attorney fees in suits to foreclose workers' compensation insurer's liens.

## CONCLUSION

The lien asserted by Industrial Indemnity was not in existence at the time the bankruptcy petition was filed. Section 362(a)(4) precludes the creation of this lien post-petition. Thus, the lien filed by Industrial Indemnity is void.

---

right arising is deemed to have been done or to have accrued at an antecedent time in order to preserve the rights as of the earlier date or otherwise to avoid injustice." *Windey v. North Star Farmers Mut. Ins. Co.*, 231 Minn. 279, 43 N.W.2d 99, 102 (1950).